Karen L. Uno (SB #117410)
kuno@bkscal.com
David P. Borovsky (SB #216588)
dborovsky@bkscal.com
BECHERER KANNETT & SCHWEITZER
1255 Powell Street
Emeryville, CA 94608
Telephone: (510) 658-3600
Facsimile: (510) 658-1151
Attorneys for Plaintiff ZENITH INSURANCE COMPANY and Third Party Defendant RAMIREZ HARVEST COMPANY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| ZENITH INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>OLD REPUBLIC INSURANCE COMPANY and ST. PAUL FIRE & MARINE INSURANCE COMPANY;<br><br>Defendants. | Case No. 5:16-cv-07219-EJD<br><br>**PLAINTIFF ZENITH'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: March 15. 2018<br>Time: 9:00 a.m.<br>Judge: Hon. Edward J. Davila |
| And related Counter-Claim and Third Party Complaint. | |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................1

II. SECTION 11580.9(D) DOES NOT CONTAIN AN EXCEPTION FOR "FLEET" POLICIES – IT APPLIES TO ANY POLICY THAT "DESCRIBES" OR "RATES" AN ACCIDENT VEHICLE..........................3

A. Ohio Casualty Is Inapposite Given The Undisputed Evidence That the ORIC Policy Both Described And Rated The Accident Vehicle..............................................................................3

B. The Other Cases Cited by ORIC For The "Fleet" Policy Exception To Section 11580.9(d) Are Also Inapposite ..............................5

III. THE UNDISPUTED FACTS DEMONSTRATE THAT THE ORIC POLICY "DESCRIBED" THE ACCIDENT VEHICLE ..............................6

A. Incorporation By Reference Of A Vehicle List Constitutes "Describing" The Vehicle ..........................................................6

B. The Timing Of When ORIC First Acquired The Vehicle List Containing The Accident Vehicle Is Irrelevant..........................................8

C. The Fact That The ORIC Policy Covers "Any Vehicle" For Liability Is Irrelevant..........................................................9

IV. UNDISPUTED FACTS DEMONSTRATE THAT THE ORIC POLICY ALSO "RATED" THE ACCIDENT VEHICLE ..........................10

A. "Rating" Does Not Require Consideration Of Each Vehicle's Physical Characteristics..........................................................11

B. The ORIC Policy "Rated" The Accident Vehicle By Charging Premium (Based On A Composite Rate) For That Vehicle..........................................................................12

C. ORIC Chose A "Composite Rate" For Taylor Based On Specific Vehicle Information For Taylor..........................................13

D. The Fact That ORIC Charged Premium For An Average Number Of Vehicles Is Irrelevant..........................................14

**Becherer Kannett & Schweitzer**

1255 Powell St.
Emeryville, CA 94608
510-658-3600

V. OBJECTIONS TO EVIDENCE……………………………………………………….....15

VI. EVEN IF SECTION 11580.9(D) DOES NOT MAKE THE ORIC POLICY PRIMARY, THE CASE MUST PROCEED TO PHASE II…………………………………………………………….…17

VI. CONCLUSION…………………………………………………………………..17

**Becherer Kannett & Schweitzer**

1255 Powell St.
Emeryville, CA 94608
510-658-3600

# TABLE OF AUTHORITIES

## STATE CASES

Page

*Avidity Partners, LLC v. State*
(2013) 221 Cal.App.4th 1180, 1194……………………………………………..………...7

*City of Grass Valley v. Cohen*
(2017) 17 Cal.App.5th 567, 581……………………………………………………….....5

*Grand Rent A Car Corp. v. 20th Century Ins. Co.*
(1994) 25 Cal.App.4th 1242………………………………………...……………….5

*Hartford Accident & Indem. Co. v. Sequoia Ins. Co.*
(1989) 211 Cal.App.3d 1285, 1299………………………………………………..5, 8

*Interinsurance Exchange v. Spectrum Investment Corp.*
(1989) 209 Cal.App.3d 1243……………………………………………………….5

*Kleffman v. Vonage Holdings Corp.*
(2010) 49 Cal.4th 334, 342………………………………………………………..11

*Mercury Cas. Co. v. Hertz Corp.*
(1997) 59 Cal.App.4th 414…………………………………………………...…..5

*Ohio Casualty Ins. Co. v. Aetna Ins. Co.*
(1978) 85 Cal.App.3d 5218……………………………………………………...3

FEDERAL CASES

*Highlands Ins. Co. v. Continental Cas. Co.*
(9th Cir. 1995)…………………………………………………………………6

*In re Countrywide Financial Corp. Mortgage-Backed Securities Litigation*
(C.D. Cal. 2013) 966 F.Supp.2d 1031, 1036……………………………………....5

*National Steel Corp. v. Golden Eagle Ins. Co.*
(9th Cir. 1997) 121 F.3d 496, 502……………………………………………........16

## STATE STATUTES AND RULES

California Insurance Code Section 11580.9(d)…………………………….1, 3, 4, 5, 6, 7, 8, 11, 17

## FEDERAL STATUTES

Fed. Rules Evid., Rule 402………………………………………………..….16, 17

Becherer Kannett & Schweitzer
1255 Powell St.
Emeryville, CA 94608
510-658-3600

## I. INTRODUCTION

ORIC's motion argues that California Insurance Code Section 11580.9(d) cannot apply to make its policy primary unless: (1) the Accident Vehicle is *specifically listed* on the ORIC Policy (and not documents incorporated into the policy); or (2) ORIC specifically considered the Accident Vehicle's *physical characteristics* (such a year, make, model, etc.) when determining how much premium to charge for the ORIC Policy. However, neither of these requirements can be found in Section 11580.9(d) itself, or the case law interpreting the same. Nor is there a broad exemption in the statute for policies that may be generally characterized as "fleet" or "audit" policies. ORIC advances these arguments in an attempt to deny that its policy satisfied the plain and simple requirements of the statute: that its policy "described" or "rated" the Accident Vehicle.

First, ORIC improperly conflates the concepts of coverage for the Accident Vehicle with whether the policy "described" or "rated" the vehicle. Coverage for the Accident Vehicle is not at issue; priority of policies is and whether the statute applies to determine that question. Thus, ORIC's discussion as to how, why and under what policy language coverage was afforded for the vehicle is irrelevant.

Second, the ORIC Policy "describes" the Accident Vehicle because rather than specifically listing the over 300 Taylor-owned vehicles on its Declarations, it used the phrase "ON FILE WITH THE COMPANY" under the heading "Schedule of Covered Autos You Own". In doing so, ORIC incorporated such lists which identify each vehicle by make, model, year, vehicle identification number, etc. into the policy by reference. And indeed, ORIC maintained a list of Taylor-owned vehicles in its underwriting files that included the Accident Vehicle. While such evidence establishes that the ORIC Policy "described" the Accident Vehicle, ORIC argues that no vehicle list was physically attached to the paper that comprises the policy and in any event the list with the Accident Vehicle was not in ORIC's possession at the time of the accident.

It is ORIC who decided against attaching the multiple page vehicle lists and using a more convenient way of describing vehicles. It cannot now argue that it did not describe the vehicle. To accept such an argument would mean that any insurer who utilized a similar shortcut reference

Becherer Kannett & Schweitzer
1255 Powell St.
Emeryville, CA 94608
510-658-3600

could claim that it did not describe any vehicle and avoid the statutory priority. In addition, ORIC's method of rating relies upon vehicles lists provided at the inception and after policy expiration to set the final premium. Thus, the pertinent vehicle lists were in ORIC's possession at the inception and after the policy expired and the accident took place. Regardless, these lists were "ON FILE WITH THE COMPANY" and included the Accident Vehicle satisfying the "described" requirement.

Third, the ORIC Policy also "rated" the Accident Vehicle because it charged a specific amount of premium—a "composite rate" of $1,965.7165 per vehicle—for all Taylor-owned vehicles. ORIC's count of Taylor-owned vehicles for determining premium was based on lists provided to ORIC at policy inception (321 vehicles) and policy end (344 vehicles). The latter list included the Accident Vehicle. Yet ORIC argues that composite rating does not qualify as "rating" under the statute because to satisfy the statute ORIC must have considered the physical attributes of each of the 300 plus Taylor owned vehicles and set individual premium charges for each vehicle. Neither the statute nor the case law impose such a requirement.

Thus, while ORIC elected to adopt a rating method that did not require the inspection of each vehicle or the assessment of an individual premium charge based on each vehicle's characteristics that does not change the fact that ORIC undisputedly charged premium for—i.e. "rated"—the Accident Vehicle. Again, to accept ORIC's argument would mean that an insurer who insured hundreds of vehicles and received significant premium for doing so by applying a "composite rate" as here could never be deemed to have "rated" a vehicle under the statute. Such a result is contrary to the statutory language and purpose. Regardless of the rating methodology selected, the statute renders the ORIC policy primary for this reason as well.

To summarize, regardless of how ORIC attempts to characterize its policy—a "fleet" or "audit" policy or otherwise—the statute plainly provides that a policy will be deemed primary if it either "describes" or "rates" the Accident Vehicle. Here, the undisputed evidence confirms that the ORIC Policy does both. As such, Zenith respectfully requests that the Court deny ORIC's motion, grant Zenith's concurrently filed motion for summary judgment, and enter an order

**Becherer Kannett & Schweitzer**

1255 Powell St.
Emeryville, CA 94608
510-658-3600

declaring that the ORIC Policy affords primary insurance for the subject accident pursuant to Section 11580.9(d).

## II. SECTION 11580.9(D) DOES NOT CONTAIN AN EXCEPTION FOR "FLEET" POLICIES – IT APPLIES TO ANY POLICY THAT "DESCRIBES" OR "RATES" AN ACCIDENT VEHICLE

The crux of ORIC's motion is that California Insurance Code Section 11580.9(d) cannot make its policy primary, because it purportedly constitutes a "fleet" policy. However, Section 11580.9(d) makes no exception for so-called "fleet" policies, nor does it even use that term or define it. Nor has any California case, including ***Ohio Casualty***, created such a blanket exception for "fleet" policies. Instead, the proper inquiry is whether the ORIC policy itself (regardless of how it is characterized) "described" or "rated" the accident vehicle.

The undisputed evidence demonstrates that it did both. This evidence is set forth in Zenith's motion for summary judgment, and reiterated below in separate sections concerning the "described" and "rated" prongs.[1] To summarize, both prongs are met because: (1) the ORIC Policy "described" the Accident Vehicle by incorporating a vehicle list in the ORIC underwriting file which identifies the Accident Vehicle by make, model, year and VIN number; and (2) the ORIC Policy "rated" the Accident Vehicle because it was one of the 344 vehicles counted to calculate premium for the ORIC Policy based on a per vehicle rate. Given these facts, regardless of whether the ORIC policy may generally be characterized as an "audit" or "fleet" policy, it is rendered primary by section 11580.9(d). As explained below, neither ***Ohio Casualty*** nor any other case cited by ORIC holds otherwise.

### A. *Ohio Casualty* Is Inapposite Given The Undisputed Evidence That the ORIC Policy Both Described And Rated The Accident Vehicle

The key case relied upon by ORIC for the purported exception to Section 11580.9(d) is ***Ohio Casualty Ins. Co. v. Aetna Ins. Co.*** (1978) 85 Cal.App.3d 521. However, this case did not create a blanket exemption to the statute for "fleet" policies. Instead, it merely found the section inapplicable to an insurance policy, which it characterized as an "audit" or "fleet" policy, and

[1] Rather than re-submit all evidence supporting Zenith's motion in connection with this opposition, Zenith has made reference to previously-submitted evidence in support of its cross-motion for summary judgment via reference to the undisputed material facts cited in Dkt. No. 56, and supporting evidence cited in the same. All new evidence not previously filed has been filed concurrently with this opposition, and cited accordingly.

Becherer Kannett & Schweitzer
1255 Powell St.
Emeryville, CA 94608
510-658-3600

which did not (according to the scant evidence before the court) actually "describe" or "rate" the accident vehicle. The evidence before the ***Ohio Casualty*** court and the evidence presented here demonstrate why this case does not control here as ORIC contends.

***Ohio Casualty*** involved a dispute over priority of coverage for an accident involving a vehicle which was co-owned by two persons, Bertram and Gamma. Aetna issued a personal auto-type policy to Bertram, which "expressly described and rated" the accident vehicle "in a schedule of the Aetna policy". Ohio Casualty issued what the court described as an "audit or fleet policy" to Gamma, and one in "which a newly acquired vehicle automatically becomes insured upon transfer of ownership (premium to be calculated upon audit)". The decision contains no further information about the contents of the Ohio Casualty policy.

Given this evidence, there was no dispute that the Aetna policy "described or rated" the vehicle and the only dispute was whether the Ohio Casualty policy also did so. Aetna's position was that because the Ohio Casualty policy automatically covered any vehicle owned by its insured (Gamma), as a matter of equity the court should ignore the "described or rated" requirement and make both policies primary, since at the time of the accident both Bertram and Gamma owned the vehicle. The court rejected Aetna's argument as inconsistent with section 11580.9(d): "The court is bound by the statute which requires description or rating; this, in commonsense understanding, means a particularization of the vehicle". ***Id.*** at 524. Because there was no other evidence of "description" or "rating" of the accident vehicle in the Ohio Casualty policy, the court concluded section 11580.9(d) did not render it co-primary with Aetna's policy. ***Id.***

In sum, this decision did not create some type of blanket exemption from section 11580.9(d) for policies that can generally be described as "audit" or "fleet" policies. Instead, the ***Ohio Casualty*** court held that *given the limited facts presented*, the Ohio Casualty policy did not "describe" or "rate" the accident vehicle. There was no evidence before the court that the Ohio Casualty policy either: (1) incorporated-by-reference a list which specifically identified the accident vehicle (thereby "describing" it); or (2) took the accident vehicle into consideration when charging premium for its policy by applying a specific rate to each vehicle (thereby "rating"

**Becherer Kannett & Schweitzer**
1255 Powell St.
Emeryville, CA 94608
510-658-3600

it). Indeed, the ***Ohio Casualty*** court did not even address the meaning of the "rated" prong or provide any guidance as to what was meant by "particularization."

Given ORIC's assertion that ***Ohio Casualty*** controls here because the Ohio Casualty policy was a fleet policy, "similar to the ORIC policy herein," the well-recognized proposition that "cases are not authority for propositions not considered" must be noted. ***City of Grass Valley v. Cohen*** (2017) 17 Cal.App.5th 567, 581; ***In re Countrywide Financial Corp. Mortgage-Backed Securities Litigation*** (C.D. Cal. 2013) 966 F.Supp.2d 1031, 1036 ["a prior opinion cannot stand as precedent for a proposition of law not explored in the opinion, even when the facts stated in the opinion would support consideration of the proposition"]. Here, the facts are markedly different and more abundant and this case does not control as ORIC asserts.

### B. The Other Cases Cited by ORIC For The "Fleet" Policy Exception To Section 11580.9(d) Are Also Inapposite

Next, ORIC argues that "a long line of cases has made clear that the statutory requirement that the vehicle be 'described or rated' refers to 'particularization'". However, each of the cases cited[2] merely cites ***Ohio Casualty*** as the authority for this general proposition. More importantly, none of these cases evaluated the "described or rated" requirements in any type of detail, much less under factual circumstances like this. Nor did any create or recognize a blanket exemption to Section 11580.9(d) for "audit" or "fleet"-type policies. Thus, these cases offer no more support for ORIC's position than ***Ohio Casualty,*** which for the reasons discussed above is inapposite due to materially different facts.

For example, ORIC specifically discusses the case of ***Interinsurance Exchange v. Spectrum Investment Corp***. (1989) 209 Cal.App.3d 1243, in which the court surmised that if "an automobile rental company had a true liability insurance policy, if it was a fleet or audit policy – a not unlikely scenario – under Ohio Cas. Ins. Co. it would not be primary according to the terms of subdivision (d). ***Id.*** at 1254. However, such facts were not before the ***Interinsurance*** court,

[2] The cases include ***Mercury Cas. Co. v. Hertz Corp.*** (1997) 59 Cal.App.4th 414 [statute inapplicable to rental agreement which did not constitute a policy of insurance]; ***Grand Rent A Car Corp. v. 20th Century Ins. Co.*** (1994) 25 Cal.App.4th 1242 [statute applicable to rental company's liability insurance where rental agreement described vehicle by make, model, and license number]; and ***Hartford Accident & Indem. Co. v. Sequoia Ins. Co.*** (1989) 211 Cal.App.3d 1285 [statute inapplicable to umbrella policy, which did not "contain[] any mention of, reference to, or 'particularization' of accident vehicle"].

Becherer Kannett & Schweitzer

1255 Powell St.
Emeryville, CA 94608
510-658-3600

which did not involve a "fleet" or "audit" policy. Instead, the "policy of automobile liability insurance" at issue was actually a cash deposit submitted by the owner of a rental vehicle, which did not describe or rate any vehicles, rendering section 11580.9(d) inapplicable. Thus, the ***Interinsurance*** court's reference to ***Ohio Casualty*** is dicta and does not extend the holding of ***Ohio Casualty*** beyond its facts, much less create a blanket exemption from section 11580.9(d) for "audit" or "fleet"-type policies.

Finally, ORIC cites the case of ***Highlands Ins. Co. v. Continental Cas. Co.*** (9th Cir. 1995) for the proposition that "a policy which merely describes a vehicle as 'owned' and does not particularize the vehicle in any other way is not a primary policy as defined by section 11580.9(d)". While that limited statement may be true, again, this case involved materially different facts. Briefly, in ***Highlands*** an insurer argued that an umbrella policy "rated or described" an accident vehicle by listing the auto policy that described the accident vehicle (and referring to it as providing coverage for owned vehicles) on its schedule of underlying insurance. Zenith does not contend that Section 11580.9(d) renders the ORIC policy primary simply because it covered all Taylor-owned vehicles or lists an underlying policy that describes the accident vehicle. Instead, Section 11580.9(d) renders the ORIC policy primary because (as explained below) the evidence demonstrates that it: (1) incorporated-by-reference a vehicle list which specifically identified the accident vehicle (thereby "describing" it); and (2) took the Accident Vehicle into consideration when charging premium for the policy at issue (thereby "rating" it). No such facts were at issue in ***Highlands***, or any of the other cases relied upon by ORIC.

## III. THE UNDISPUTED FACTS DEMONSTRATE THAT THE ORIC POLICY "DESCRIBED" THE ACCIDENT VEHICLE

Turning to the alternative requirements of Section 11580.9(d), ORIC argues that its policy does not "describe" the Accident Vehicle because it does not "particularize" the vehicle by appropriate characteristics such as make, model, and VIN number. This position ignores the following undisputed facts:

- The ORIC Policy's Declarations contains a field for "Schedule of Covered Autos You Own" and the entry "ON FILE WITH THE COMPANY" [Dkt. No. 56, Zenith's UMF#37];

**Becherer Kannett & Schweitzer**
1255 Powell St.
Emeryville, CA 94608
510-658-3600

- ORIC has confirmed that the phrase "ON FILE WITH THE COMPANY" refers to "vehicle lists that are within [ORIC's] underwriting files" [Dkt. No. 56, Zenith's UMF#38]; and
- ORIC undisputedly had possession of a list, in its underwriting files, which identified the Accident Vehicle by year, make, model, VIN number, and other characteristics [Dkt. No. 56, Zenith's UMF#39].

ORIC makes various arguments as to why this evidence (which is undisputed) falls short of "particularization". As explained below, none have merit.

### A. Incorporation By Reference Of A Vehicle List Constitutes "Describing" The Vehicle

First, ORIC has argued that the reference to vehicles "on file with the company" on the Declarations of the ORIC policy does not constitute a "description" of the Accident Vehicle because: (1) the list is not physically attached to or made "a part of the policy" [ORIC's MPA at p. 9:19 – 10:1]; and (2) the list was purportedly not in ORIC's possession "at the time of the accident" [ORIC's MPA at p. 17:10 – 18:12].

Section 11580.9(d) provides that the "policy in which the motor vehicle is described or rated" is primary. However, the statute contains no "physical attachment" requirement. Nor has ORIC cited to any authority holding that its use of the phrase "ON FILE WITH THE COMPANY" as a shorthand, is insufficient to constitute a "description" of vehicles on such a list. Indeed, California law recognizes the concept of incorporation by reference under circumstances like this, even where the phrase "incorporated by reference" is not used:

> 'A contract may validly include the provisions of a document not physically a part of the basic contract. ... "It is, of course, the law that the parties may incorporate by reference into their contract the terms of some other document. [Citations.] But each case must turn on its facts. [Citation.] For the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties." ' [Citations.] [¶] The contract need not recite that it 'incorporates' another document, so long as it 'guide[s] the reader to the incorporated document.'

***Avidity Partners, LLC v. State*** (2013) 221 Cal.App.4th 1180, 1194.

Here, the reference to the vehicle list "ON FILE WITH" ORIC was "clear and unequivocal" and "called to the attention" of all parties, because it is specified on the policy's Declarations in bold and capital letters in a stand-alone section. There is no evidence that this

**Becherer Kannett & Schweitzer**

1255 Powell St.
Emeryville, CA 94608
510-658-3600

reference was hidden from ORIC or Taylor in any respect, or that ORIC did not consent to this language in a policy that is issued. Furthermore, the lists of Taylor-owned vehicles were "known or easily available to the contracting parties", as they were prepared by Taylor and its broker, provided to ORIC through its agent ARU, and maintained in the ORIC underwriting files. [Dkt. No. 52 (Moore Decl.), ¶21, Dkt. No. 52-6 (Ex. 5 to same declaration)].

In addition, California case law suggests that incorporation-by-reference of a vehicle list *will* satisfy the "described" prong under the reasoning of the ***Hartford Accident & Indem. Co. v. Sequoia Ins. Co.*** (1989) 211 Cal.App.3d 1285, 1299 cited in ORIC's moving papers. As noted, that case held that Section 11580.9(d) did not apply to a Harford Umbrella Policy because there was inadequate language in that policy which expressly incorporated the underlying business auto policy (and its vehicle list) into the Hartford Umbrella policy: "*there being no incorporation by reference* of the Hartford Business Auto policy into the Hartford Umbrella policy, the 1976 Chevrolet Blazer is not "described or rated as an owned automobile" in the umbrella policy …". ***Hartford, supra*** 211 Cal.App.3d 1285, 1299. [Emphasis added]. As a result, the court held that section 11580.9(d) could not apply because the Hartford Umbrella policy did not "contain[] any mention of, *reference to*, or 'particularization' of the" accident vehicle. ***Id.*** at 1297–1298 [emphasis added].

However, the discussion demonstrates that had appropriate language been used, a policy may "incorporate by reference" a list of described vehicles, and make the same a part of the policy. Here, that is what ORIC did: instead of attaching a multi-page list it used the phrase "ON FILE WITH THE COMPANY" and by doing so incorporated by reference a description of the accident vehicle. As contemplated in ***Hartford***, this type of incorporation by reference is sufficient to constitute "describing" the accident vehicle.

### B. The Timing Of When ORIC First Acquired The Vehicle List Containing The Accident Vehicle Is Irrelevant

ORIC also argues that even if the vehicle list is part of the policy it (purportedly) did not receive a list containing the Accident Vehicle until after the ***Grant*** accident (June 20, 2013). It points out that the vehicle list in its possession at the time of the accident did not contain and

**Becherer Kannett & Schweitzer**
1255 Powell St.
Emeryville, CA 94608
510-658-3600

describe the Accident Vehicle. Therefore, ORIC asserts that the court must find the Accident Vehicle was not "ON FILE WITH THE COMPANY" or "described" by the subject Policy. Not so.

That is because by its plain language, the ORIC Policy does not require that the list be "on file with" ORIC *at any specific time* – only that it be "on file", which it undisputedly was, as part of ORIC's underwriting files. In other words, it is undisputed that ORIC had a list on file that described the Accident Vehicle, a fact that it does not mention. [Dkt. No. 56, Zenith's UMF#39].

Moreover, regardless of when ORIC first obtained a copy of a list with the Accident Vehicle, it is undisputed that a vehicle list containing the Accident Vehicle was used by ORIC in setting premium for the ORIC Policy. [Dkt. No. 56, UMF# 28-32]. Indeed, in its motion ORIC admits that the Accident Vehicle "was included among the vehicles reported in the audit at the end of the policy and it was part of the numbers used to calculate the average number of vehicles in the fleet throughout the policy year". [ORIC's MPA, p. 18:4-8]. In other words, not only did ORIC possess a vehicle list containing the Accident Vehicle in its underwriting files, the vehicles on that list were used to calculate the premium charged for the ORIC Policy at issue in this dispute.

### C. The Fact That The ORIC Policy Covers "Any Vehicle" For Liability Is Irrelevant

In an effort to minimize the significance of the list "ON FILE WITH THE COMPANY", ORIC argues that vehicle lists "are meaningless under 'Symbol 1' policies as 'Any Auto' is covered by the policy whether or not it is on a list". [ORIC's MPA p. 10:6-9]. This argument focuses on an irrelevant issue: the basis for coverage under the ORIC policy.

In other words, this dispute is premised on the fact that both the Zenith and ORIC policies provided coverage for the accident. Given that premise, the only remaining question is which policy "described or rated" the Accident Vehicle as that policy will be deemed primary. ORIC confuses the issue of why there was coverage for the Accident Vehicle under its policy with whether its policy "described or rated" the Accident Vehicle. While the ORIC policy provided "Symbol 1" coverage that does not mean that it did not describe or rate the Accident Vehicle.

**Becherer Kannett & Schweitzer**

1255 Powell St.
Emeryville, CA 94608
510-658-3600

That is a separate inquiry that can only be determined by certain specific characteristics of the ORIC policy, independent of the "Symbol 1" designation for coverage.

Nor is the list of Taylor-owned vehicles "meaningless" to ORIC as it asserts. If so, why were such vehicle lists maintained by ORIC in their underwriting files? And why the reference to such vehicles "ON FILE WITH THE COMPANY" on the Policy Declarations? At the very least, such lists were used in setting premium for (i.e. "rating") the ORIC policy as described in greater detail below. [Dkt. No. 56, Zenith's UMF# 28-32].

Finally, *even if* ORIC could somehow explain why the vehicle lists contained in its underwriting files were completely "meaningless", that does not mean that the ORIC policy did not "describe" the Accident Vehicle. The California Legislature directed that the policy that "describes or rates" the accident vehicle will be deemed primary. In doing so it did not require an inquiry into and explanation of the reasons for and mechanics of covering a vehicle. Rather, it simply directed that the policy that "described or rated" the vehicle in some fashion would be deemed primary. Here, it is undisputed that ORIC's policy did both.

## IV. UNDISPUTED FACTS DEMONSTRATE THAT THE ORIC POLICY ALSO "RATED" THE ACCIDENT VEHICLE

ORIC argues that its policy did not "rate" the Accident Vehicle despite the fact that it applied a "composite rate" ($1,965.7165) to each Taylor-owned vehicle including the Accident Vehicle to determine the policy premium. ORIC concludes, without legal authority or supporting statutory language, that charging a per-vehicle "composite rate" does not constitute rating a vehicle because "the elements of the composite rate do not involve particularization of any vehicle" such as the value, age, make, model etc. of each vehicle. ORIC then proceeds to explain the other factors that are used to determine Taylor's composite rate per vehicle.

As explained below, ORIC's arguments are undermined by the undisputed evidence that ORIC actually counted and charged premium for the Accident Vehicle as one of the 344 Taylor-owned vehicles reported at policy end. There is no legal authority for ORIC's proposition that rating under the statute can only mean rating according to the individual characteristics of each vehicle. Nor are the factors that are used to determine Taylor's composite rate of $1,965.7165

Becherer Kannett & Schweitzer

1255 Powell St.
Emeryville, CA 94608
510-658-3600

material. By applying the composite rate to the Accident Vehicle, the policy "rated" the vehicle, regardless of how the per-vehicle rate was calculated.

### A. "Rating" Does Not Require Consideration Of Each Vehicle's Physical Characteristics

While ORIC argues that its policy does not "rate" the Accident Vehicle, it never explains what that word means in this context. Instead, ORIC asserts that both "described" and "rated" simply mean the same thing—i.e. both mean "particularization". ORIC then asserts (without authority) that the Accident Vehicle was not "particularized" in the rating of the ORIC Policy because ORIC did not consider the physical characteristics of the Accident Vehicle when charging premium for that vehicle. ORIC's position is not supported by case law or the logical meaning of the words used in the statute.

First, ORIC's reasoning is based solely on the ***Ohio Casualty*** case, which as discussed above, is inapposite due to materially different facts here which were not before that court. Moreover, a close reading of that case indicates that the court did not analyze the "rated" prong of section 11580.9(d). Instead, the court focused on whether the policy at issue "described" the accident vehicle, and reasoned that "described" meant "particularized" (a term that does not appear anywhere in the statute). The court did not analyze the "rated" prong, did not find or indicate that "rated" required "particularization" of the physical characteristics of a vehicle and did not explain (much less determine) what "particularized" means with respect to an accident vehicle and the calculation of premium. Again, cases are not authority for propositions not considered.

Second, while "particularization" comports with the common understanding of the word "described", it does not with the concept of "rating." Instead, "rating" has a plain and common-sense meaning in the insurance industry: it means "determining the amount of premium to be paid to insure or reinsure a risk". [Dkt. No. 61 (Borovsky Decl.) Ex. C]. Given the use of the disjunctive "or", and the different plain meanings of the two words, they should not be lumped together to collectively mean "particularized". ***Kleffman v. Vonage Holdings Corp.*** (2010) 49 Cal.4th 334, 342 ["[w]hen the Legislature uses materially different language in statutory

**Becherer Kannett & Schweitzer**

1255 Powell St.
Emeryville, CA 94608
510-658-3600

provisions addressing the same subject or related subjects, the normal inference is that the Legislature intended a difference in meaning."]. Thus, "described" and "rated" have different and not redundant meanings. While the ***Ohio Casualty*** court may have indicated a "particularized" description was required by the statute, it did not indicate the same for rating or provide any guidance as to what that might mean as to determining premium charge.

In sum, to accept ORIC's interpretation of "rating" would require the Court to add a requirement to the statute that does not exist: "rating" means "charging premium based upon the specific characteristics of the vehicle." The statutory language and legislative history do not provide any indication that this requirement was intended. Instead, given the generally accepted meaning in the insurance industry and the above authorities, "rating" a vehicle means considering a vehicle in "determining the amount of premium to be paid to insure or reinsure a risk".[3] As explained in Zenith's cross-motion (and summarized below), that test is met here.

### B. The ORIC Policy "Rated" The Accident Vehicle By Charging Premium (Based On A Composite Rate) For That Vehicle

Next, ORIC argues that the Accident Vehicle was not "rated" because ORIC uses a "composite rate" to calculate its premium and the "elements of the composite rate do not involve particularization of any vehicle." [ORIC MPA In Support Of Motion, 15:1-2]. Here, the one page COMPOSITE RATE ENDORSEMENT attached to the ORIC Policy that explains the methodology used to calculate the premium charged for the ORIC policy undermines this entire argument. [Dkt. No. 52-1 (Moore Decl., Exh.1) p. 0028].

As stated in the endorsement, the ORIC Policy charged a specific composite rate ($1,965.7165) for each vehicle counted for the policy in order to determine the total premium charged to the policy. It is undisputed that one of the counted vehicles for which premium was charged was the Accident Vehicle—i.e. it was one of the 344 vehicles reported by Taylor to ORIC following the end of policy term, or as referred to in the COMPOSITE RATE ENDORSEMENT the "ending count." Indeed, ORIC admits that the Accident Vehicle "was

[3] Moreover, even if the Court agreed with ORIC and concluded that "rated" meant "particularized", that test is likewise met because as discussed above, the ORIC Policy incorporated by reference a Taylor-owned vehicle list which was "ON FILE WITH THE COMPANY" and identified the Accident Vehicle by make, model, and VIN number.

Becherer Kannett & Schweitzer
1255 Powell St.
Emeryville, CA 94608
510-658-3600

included among the [Taylor-owned] vehicles reported in the audit at the end of the policy and it was part of the numbers used to calculate" the final premium for the ORIC Policy. [ORIC's MPA at p. 18:4-8].[4]

No further facts are necessary to establish that the ORIC Policy "rated" the Accident Vehicle. As noted, "rating" means considering a vehicle in "determining the amount of premium to be paid to insure or reinsure a risk". ORIC has offered no alternative definition. And it is undisputed that ORIC considered the Accident Vehicle, and applied a per-vehicle charge for this vehicle as one of the 344 vehicles reported by Taylor at policy end. That constitutes "rating".

### C. ORIC Chose A "Composite Rate" For Taylor Based On Specific Vehicle Information For Taylor

Conceding the above, ORIC's response is that its policy did not "rate" the Accident Vehicle because the composite rate chosen for Taylor was in no way specifically calculated or "particularized" for Taylor and its over 300 listed vehicles. To that end, ORIC represents that a composite rate is developed for the "entire captive group" as opposed to individual members like Taylor, suggesting that one broad "composite rate" was charged to an entire group of insureds (known as the "Terra Group") and that rate was in no way particular to Taylor. This information is immaterial as to whether the ORIC policy "rated" the Accident Vehicle given the application of the composite rate to the Accident Vehicle. Moreover, ORIC's evidence on this point is disputed. [Zenith's Response To ORIC's Separate Statement, Fact Nos. 21-24, 27-28, and 33].

In fact, the evidence confirms that ORIC (and the "captive manager" ARU) considered each member's individual loss history, number of vehicles, garage locations and types of vehicles in determining the composite rate for each member of the captive group. [Zenith's Response to ORIC Separate Statement, Fact Nos. 28 and 30]. ORIC's suggestion that the composite rate calculated for Taylor was the same composite rate for all members is misleading and disputed. In fact, ORIC has confirmed that a different per-vehicle "composite rate" was developed for each member of the Terra Group (such as Taylor), and ORIC's underwriting documents confirm that the per-vehicle "composite rate" charged to Taylor was different from the per-vehicle rate

Becherer
Kannett &
Schweitzer

1255
Powell St.
Emeryville, CA
94608
510-658-3600

[4] Zenith also submitted undisputed evidence demonstrating this fact in its concurrently-filed motion, which will not be repeated here. [Dkt. No. 56, Zenith's UMF #s 15-36].

charged to the other members of the Terra Group. [Zenith's Response to ORIC Separate Statement, Fact Nos. 21, 22, 24, 27, and 33]. In other words, the per-vehicle "composite" rate *was* specific to Taylor. It was not a single "group" composite rate applicable to all the members. Thus, to the extent that ORIC's evidence of a composite rate for the "entire captive group" is material (which it is not) it is misleading and disputed.

Similarly, ORIC's explanation of the "rating elements" (dividend pool, the risk sharing pool, the total loss pool, etc.) used to calculate a "composite rate" for each member are immaterial to the issue of whether the ORIC policy "rated" the Accident Vehicle. The calculations that were employed to derive a composite rate of $1,965.7165 per Taylor vehicle do not undermine the fact that the Accident Vehicle was rated *using* that composite rate. As such, the majority of the facts contained in the lengthy declarations of Ann Wachtler [Dkt. No. 51] and Nicholas Moore [Dkt No. 52] in support of ORIC's motion—which identify the specific factors considered in the Loss Rating Model used to generate a composite rate—are irrelevant and a distraction. They are also disputed as being incomplete.

To summarize, ORIC applies a per-vehicle composite rate to Taylor-owned vehicles determine policy premium. ORIC has decided to adopt a rating method that does not require the inspection of each vehicle and the assessment of an individual premium charge, presumably to avoid the work involved in evaluating hundreds of vehicles. Selecting a rating methodology that considers loss history and not the physical aspects of each vehicle does not mean that ORIC did not "determine the amount of premium to be paid to insure" the Accident Vehicle or "rate" it. It did, and should not be allowed to avoid the statutory presumption because of the rating method it selected.

### D. The Fact That ORIC Charged Premium For An Average Number Of Vehicles Is Irrelevant

Finally, ORIC argues that it did not "rate" the Accident Vehicle because it actually charged premium based on a count of 333 vehicles for the relevant policy term, which was the average between the number of vehicles reported by Taylor at policy inception (321) and policy

Becherer Kannett & Schweitzer
1255 Powell St.
Emeryville, CA 94608
510-658-3600

end (344). While this may be true and in accordance with the policy's Composite Rate Endorsement, it does not mean that ORIC did not "rate" the Accident Vehicle.

That is because if the Accident Vehicle had not been included in the final count, the premium charged to Taylor for the ORIC Policy would have been reduced. But because the Accident Vehicle was one of the 344 Taylor-owned vehicles on the end-of-policy vehicle list, a specific amount of premium was charged for this vehicle, and that charge was used in the calculation of the final premium on the policy. In other words, the Accident Vehicle was undisputedly considered, counted, included in determining policy premium and therefore rated by the ORIC policy.

## V. OBJECTIONS TO EVIDENCE

As noted, the majority of the declarations of Anne Wachtler [Dkt. No. 51] and Nicholas Moore [Dkt. No. 52] submitted in support of ORIC's motion is objectionable because both address at issues that are immaterial, such as whether the ORIC policy provided insurance coverage for the Accident Vehicle (which it undisputedly did) and how the ORIC Policy's composite rate was calculated. Zenith objects to the specific contents of these declarations on these grounds and others, as follows:

First, Zenith objects to the following portions of these two declarations as irrelevant and inadmissible pursuant to Fed. Rules Evid., Rule 402, because they constitute legal conclusions about the content of the ORIC Policy, the meaning of the provisions of the ORIC Policy, or how coverage is determined under that policy:

(1) Moore Declaration [Dkt. No. 52]: p. 2:28 – 3:6 (from ¶6); 3:10-20 (all of ¶¶7 and 8); 3:24-27 (from ¶9); 8:1-9 (all of ¶¶24 and 25); and

(2) Wachtler Declaration [Dkt. No. 51]: p. 4:2-9 (from ¶6); p. 7:1-12 (all of ¶¶18, 19, and 20.

Second, Zenith objects to the following portions of the two declarations as irrelevant and inadmissible pursuant to Fed. Rules Evid., Rule 402, because they pertain to how the "composite rate" for the ORIC Policy was calculated, which are not facts that are relevant to the issues in this case:

Becherer Kannett & Schweitzer
1255 Powell St.
Emeryville, CA 94608
510-658-3600

(1) Moore Declaration [Dkt. No. 52] p. 4:20-28 (from ¶12); 5:16-21 (from ¶14); and

(2) Wachtler Declaration [Dkt. No. 51]: p. 5:3-13 (from ¶11); 6:3-13 (all of ¶15).

Third, Zenith objects to the following portions of Mr. Moore's declaration as irrelevant and inadmissible pursuant to Fed. Rules Evid., Rule 402, because they pertain to whether or not ORIC's insured was "required to report additions and deletions to the vehicle fleet" to ORIC, which facts are not relevant to the issues in this case: Moore Declaration [Dkt. No. 52] p. 4:17-19 (from ¶11).

Fourth, Zenith objects to the following portions of the two declarations as they constitute conclusory statements without factual support (***National Steel Corp. v. Golden Eagle Ins. Co.*** (9th Cir. 1997) 121 F.3d 496, 502) and the witnesses have not established that they have personal knowledge of the underlying facts that support these statements (Fed. Rules Evid. Rule 602):

(1) Moore Declaration [Dkt. No. 52] p.6:1-2 (from ¶16);

(2) Wachtler Declaration [Dkt. No. 51], p.6:21-26 (from ¶17) (the witness has no personal knowledge of what ORIC uses the "schedule of vehicles" for).

Fifth, Zenith objects to the following portions of the two declarations as they constitute inadmissible hearsay concerning the content of a document referenced as a "Renewal Workbook" which is not attached to either declaration (Fed. Rules Evid. Rule 802):

(1) Moore Declaration [Dkt. No. 52]: 4:20-28 (from ¶12); and

(2) Wachtler Declaration [Dkt. No. 51]: p. 5:3-13 (from ¶11).

Sixth, Zenith objects to the following references to "fleet basis" in the two declarations pursuant to Fed. Rules Evid., Rule 402 because they are too vague and ambiguous to have any probative value:

(1) Moore Declaration [Dkt. No. 52]: p. 2:27 (from ¶6); and

(2) Wachtler Declaration [Dkt. No. 51]: p. 4:1 (from ¶8).

In light of the above, all of the above evidence should be stricken from the record and not considered in connection with ORIC's motion for summary judgment.

**Becherer Kannett & Schweitzer**

1255 Powell St.
Emeryville, CA 94608
510-658-3600

## VI. EVEN IF SECTION 11580.9(D) DOES NOT MAKE THE ORIC POLICY PRIMARY, THE CASE MUST PROCEED TO PHASE II

In the conclusion section of ORIC's motion, it argues that should the Court find Section 11580.9(d) inapplicable to render the ORIC policy primary, ORIC is "entitled to judgment as a matter of law" because "each of plaintiff's claims for relief are predicated on the application of Insurance Code section 11580.9(d)". That is incorrect.

In fact, as demonstrated by the allegations of Zenith's complaint, Section 11580.9(d) is one basis for Zenith's claim for relief, but not the exclusive one. Thus, even if ORIC's motion was granted and Zenith's cross-motion was denied, the Court would have to resolve other legal questions in order to determine which policy was primary, including but not limited to: (1) whether the ORIC Policy is rendered primary because it covered the driver (Mr. Resendiz) for the accident whereas the Zenith policies do not, and only afford coverage for Ramirez Harvest for its vicarious liability for the accident [Dkt. No. 1, ¶¶30, 36, 42]; and (2) the impact of the policies' "other insurance" provisions. Per the Court's Order Granting Motion To Bifurcate and Stay [Dkt. No. 41], those issues, and others, will be adjudicated as part of Phase II of the trial of this matter.

## VII. CONCLUSION

For all of the foregoing reasons, the undisputed evidence demonstrates that the ORIC Policy both "described" and "rated" the Accident Vehicle. As a result, the ORIC Policy must be rendered primary insurance for the accident at issue in the ***Grant*** lawsuit, ORIC's motion must be denied, and Zenith's cross-motion must be granted in full.

Respectfully submitted,

Dated: February 14, 2018 BECHERER KANNETT & SCHWEITZER

By: */s/ David P. Borovsky*
KAREN L. UNO
DAVID P. BOROVSKY
Attorneys for Plaintiff ZENITH INSURANCE COMPANY and Third Party Defendant RAMIREZ HARVEST COMPANY, INC.

Becherer Kannett & Schweitzer
1255 Powell St.
Emeryville, CA 94608
510-658-3600