Karen L. Uno (SB #117410)
kuno@bkscal.com
David P. Borovsky (SB #216588)
dborovsky@bkscal.com
BECHERER KANNETT & SCHWEITZER
1255 Powell Street
Emeryville, CA 94608
Telephone: (510) 658-3600
Facsimile: (510) 658-1151
Attorneys for Plaintiff ZENITH INSURANCE COMPANY and
Third Party Defendant RAMIREZ HARVEST COMPANY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| ZENITH INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>OLD REPUBLIC INSURANCE COMPANY and ST. PAUL FIRE & MARINE INSURANCE COMPANY;<br><br>Defendants. | Case No. 5:16-cv-07219 EJD<br><br>**PLAINTIFF ZENITH'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date: March 15, 2018<br>Time: 9:00 a.m.<br>Dept.: Hon. Edward J. Davila |

**Becherer Kannett & Schweitzer**

1255 Powell St.
Emeryville, CA 94608
510-658-3600

# TABLE OF CONTENTS

Page

I. ORIC HAS FAILED TO DISPUTE THAT ITS POLICY "RATED"—CHARGED PREMIUM FOR—THE ACCIDENT VEHICLE……………………..…………………………….………….1

A. "Rating" Means Charging Premium And Does Not Require Consideration Of A Vehicle's Physical Characteristics……………………………………..……..……………….….…..2

B. The Fact That ORIC Charged Premium For An Average Number Of Vehicles Is Irrelevant….…………………………………………………5

II. ORIC HAS ALSO FAILED TO DISPUTE THAT ITS POLICY "DESCRIBED" THE ACCIDENT VEHICLE…….……………..…………….6

A. Incorporation By Reference Of A Vehicle List Constitutes "Describing" The Vehicle…………………………………………...6

B. The Fact That The ORIC Policy Covers "Any Vehicle" For Liability Is Irrelevant……………………………………………………...……8

C. Neither *Ohio Casualty* Or The Other Cases Cited By ORIC Demonstrate Otherwise……………………………………………………...……9

III. THE TIMING OF WHEN ORIC OBTAINED THE LIST CONTAINING THE ACCIDENT VEHICLE IS IRRELEVANT…….…….….……..…10

IV. OBJECTIONS TO EVIDENCE……………………………………………….……11

V. ORIC HAS FAILED TO CREATE ANY DISPUTED ISSUES OF MATERIAL FACT……………………….………………………...….12

VI. IF THE COURT DETERMINES THE ORIC POLICY TO BE PRIMARY INSURANCE FOR THE GRANT ACCIDENT, ZENITH IS ENTITLED TO RECOUP ITS DEFENSE COSTS…………………….………..13

VII. CONCLUSION……………………………………………………………………...14

**Becherer Kannett & Schweitzer**

1255 Powell St.
Emeryville, CA 94608
510-658-3600

# TABLE OF AUTHORITIES

**STATE CASES**

Page

*Avidity Partners, LLC v. State*
(2013) 221 Cal.App.4th 1180, 1194……………………………………………………7

*City of Grass Valley v. Cohen*
(2017) 17 Cal.App.5th 567, 581…………………………………………..…….4

*Grand Rent A Car Corp. v. 20th Century Ins. Co.*
(1994) 25 Cal.App.4th 1242………………………………………………………..…9

*Hartford Accident & Indem. Co. v. Sequoia Ins. Co.*
(1989) 211 Cal.App.3d 1285, 1299………………………………………………..7, 9

*Interinsurance Exchange v. Spectrum Investment Corp*.
(1989) 209 Cal.App.3d 1243……………………………………………………...…9

*Kleffman v. Vonage Holdings Corp.*
(2010) 49 Cal.4th 334, 342…………………………………….……………..…4

*Mercury Cas. Co. v. Hertz Corp.*
(1997) 59 Cal.App.4th 414……………………………………………………...…9

*Signal Cos., Inc. v. Harbor Ins. Co.*
(1980) 27 C3d 359, 368……………………………………………………………..13

*Transcontinental Ins. Co. v. Insurance Co. of State of Pennsylvania*
(2007) 148 Cal.App.4th 1296, 1309………………………………………..…….14

**STATE STATUTES AND RULES**

California Insurance Code section 11580.9(d)……………………….………………2

**FEDERAL CASES**

*In re Countrywide Financial Corp. Mortgage-Backed Securities Litigation*
(C.D. Cal. 2013) 966 F.Supp.2d 1031, 1036……………………………………..…4

*Highlands Ins. Co. v. Continental Cas. Co.*
(9th Cir. 1995)……………………………………………………………………10

Becherer Kannett & Schweitzer
1255 Powell St.
Emeryville, CA 94608
510-658-3600

## I. ORIC HAS FAILED TO DISPUTE THAT ITS POLICY "RATED"—CHARGED PREMIUM FOR—THE ACCIDENT VEHICLE

ORIC's first argument is that its policy does not "rate" the accident vehicle (or any vehicles, for that matter) because "no particularization of vehicles exists in the underwriting or rating of the ORIC Policy". Instead, ORIC argues that its "policy rating process" is done without considering the specific attributes of any vehicle and is based on developing a lump sum premium amount, which is based on multiple factors (such as "risk sharing pool", "total loss pool", and various fees). ORIC argues that it takes this number, and divides it by the number of reported Taylor-owned vehicles, to come up with a per-vehicle "composite rate", which essentially constitutes the amount of premium charged for each Taylor vehicle. Then, if additional vehicles are reported by Taylor at policy end, additional premium charges are assessed, on a "per-vehicle" basis, using this composite rate. Yet, ORIC insists that applying a specific composite rate to each Taylor vehicle is not rating the vehicle.

While these facts are essentially undisputed, ORIC asserts that "rating" a vehicle means something different from *charging premium for a vehicle*. In other words, ORIC directs the Court to the factors that are considered in setting the policy premium and composite rate and emphasizes that they do not include the individual characteristics of a vehicle like, age, make, model etc. and therefore the "rating" process simply ends at that point and no vehicle is rated under this process. Thus, ORIC argues, it is irrelevant that ORIC undisputedly later charged Taylor premium, based on the "composite rate", for all additionally reported vehicles, including the Accident Vehicle because the use of a composite rate per vehicle is merely a method "necessary to 'true up' the policy premium upon audit."

This leap in logic—that "rating" means something other than the process of charging premium for a vehicle—is not supported by any case law or other authority cited by ORIC. In fact, per the dictionary definitions and insurance industry authorities (such as IRMI) cited in Zenith's moving papers, in the insurance context "rating" a vehicle means "the process by which an insurer arrives at a policy premium for a particular risk" or "determining the amount of premium to be paid to insure or reinsure a risk". [Zenith's MPA at p. 6:1-8]. Thus, in the context of insurance for vehicles, "rating" means charging premium for a vehicle.

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

Here, ORIC charged premium for the Accident Vehicle because it is undisputed that:

- As demonstrated by ORIC's Composite Rate Endorsement, one specific "composite" rate is effectively charged to Taylor on a per-vehicle basis;
- In calculating additional premium to be collected at policy end, ORIC counted vehicles owned by Taylor at policy inception (321) and policy-end (344);
- The list of 344 vehicles at policy-end included the Accident Vehicle; and
- ORIC actually charged premium, for the relevant policy year, based on an average count of 333 vehicles (321 + 344 = 665; 665 / 2 = 332.5, rounded up to 333).

This establishes that ORIC actually charged premium for the Accident Vehicle, because it was one of the "counted" vehicles that ORIC considered and collected premium for. This constitutes "rating" the Accident Vehicle, and none of ORIC's arguments to the contrary (addressed below) have merit.

### A. "Rating" Means Charging Premium And Does Not Require Consideration Of A Vehicle's Physical Characteristics

While ORIC argues that its policy does not "rate" the Accident Vehicle, it struggles to articulate precisely what that word means in this context, cites no applicable authority, and fails to respond to Zenith's position that "rating" means charging premium for a vehicle. Instead, ORIC asserts that the word "rated" simply means the same thing as "described"—i.e. both mean "particularization". ORIC then asserts that the Accident Vehicle was not "particularized" because ORIC did not consider the physical characteristics of the Accident Vehicle when applying its complex series of factors to determine "composite rate". Again, ORIC's position is not supported by case law or the logical meaning of the words used in the statute.

First, ORIC's reasoning is based solely on the ***Ohio Casualty*** case, which is inapposite due to materially different facts here which were not before that court. ORIC urges the Court to interpret this case as creating a blanket rule that "audit" or "fleet"-type policies (never defined) do not "rate" any vehicles within the meaning of California Insurance Code section 11580.9(d). This is a gross oversimplification of the holding of ***Ohio Casualty***, and one that stretches far past the factual constraints of that decision.

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

***Ohio Casualty*** involved a dispute over priority of coverage for an accident involving a vehicle which was co-owned by two persons, Bertram and Gamma. Aetna issued a personal auto-type policy to Bertram, which "expressly described and rated" the accident vehicle "in a schedule of the Aetna policy". Ohio Casualty issued what the court described as an "audit or fleet policy" to Gamma, and one in "which a newly acquired vehicle automatically becomes insured upon transfer of ownership (premium to be calculated upon audit)". The decision contains no further information about the contents of the Ohio Casualty policy.

Given this evidence, there was no dispute that the Aetna policy "described or rated" the vehicle and the only dispute was whether the Ohio Casualty policy also did so. Aetna's position was that because the Ohio Casualty policy automatically covered any vehicle owned by its insured (Gamma), as a matter of equity the court should ignore the "described or rated" requirement and make both policies primary, since at the time of the accident both Bertram and Gamma owned the vehicle. The court rejected Aetna's argument as inconsistent with section 11580.9(d): "The court is bound by the statute which requires description or rating; this, in commonsense understanding, means a particularization of the vehicle". ***Id.*** at 524. Because there was no other evidence of "description" or "rating" of the accident vehicle in the Ohio Casualty policy, the court concluded section 11580.9(d) did not render it co-primary with Aetna's policy. ***Id.***

In sum, this decision did not create some type of blanket exemption from section 11580.9(d) for policies that can generally be described as "audit" or "fleet" policies. Nor did it hold that such policies do not "rate" any vehicles. Instead, the ***Ohio Casualty*** court held that *given the limited facts presented*, the Ohio Casualty policy did not "describe" or "rate" the accident vehicle. However, unlike here, there was no evidence before the court that the Ohio Casualty policy either: (1) incorporated-by-reference a list which specifically identified the accident vehicle (thereby "describing" it); or (2) took the accident vehicle into consideration when charging premium for its policy by applying a specific rate to each vehicle (thereby "rating" it). Indeed, the ***Ohio Casualty*** court did not even address the meaning of the "rated" prong or provide any guidance as to what was meant by "particularization."

**Becherer Kannett & Schweitzer**

1255 Powell St.
Emeryville, CA 94608
510-658-3600

"Cases are not authority for propositions not considered". ***City of Grass Valley v. Cohen*** (2017) 17 Cal.App.5th 567, 581; ***In re Countrywide Financial Corp. Mortgage-Backed Securities Litigation*** (C.D. Cal. 2013) 966 F.Supp.2d 1031, 1036 ["a prior opinion cannot stand as precedent for a proposition of law not explored in the opinion, even when the facts stated in the opinion would support consideration of the proposition"]. Here, the facts are markedly different and exceedingly more abundant than in ***Ohio Casualty***, and this case does not control as ORIC asserts. The court did not analyze the "rated" prong, did not find or indicate that "rated" required "particularization" of the physical characteristics of a vehicle and did not explain (much less determine) what "particularized" means with respect to rating a vehicle.

Second, while "particularization" comports with the common understanding of the word "described", it does not with the concept of "rating." Instead, "rating" has a plain and common-sense meaning in the insurance industry: it means "determining the amount of premium to be paid to insure or reinsure a risk". [Dkt. No. 61 (Borovsky Decl.) Ex. C]. Given the use of the disjunctive "or", and the different plain meanings of the two words, they should not be lumped together to collectively mean "particularized". ***Kleffman v. Vonage Holdings Corp.*** (2010) 49 Cal.4th 334, 342 ["[w]hen the Legislature uses materially different language in statutory provisions addressing the same subject or related subjects, the normal inference is that the Legislature intended a difference in meaning."]. Thus, "described" and "rated" have different and not redundant meanings. While the ***Ohio Casualty*** court may have indicated a "particularized" description was required by the statute, it did not indicate the same for *rating* or provide any guidance as to what that might mean as to determining premium charge.

In sum, to accept ORIC's interpretation of "rating" would require the Court to add a requirement to the statute that does not exist: "rating" means "considering the specific characteristics of the vehicle when charging premium for the policy". The statutory language and legislative history do not provide any indication that this requirement was intended. Stated another way, there is no authority for the proposition that ORIC's selected method of rating a vehicle by developing a specific composite rate applicable to each vehicle cannot amount to rating a vehicle. Instead, as noted above, "rating" a vehicle means "determining the amount of

**Becherer Kannett & Schweitzer**

1255 Powell St.
Emeryville, CA 94608
510-658-3600

premium to be paid to insure or reinsure a risk [the vehicle]". Since the undisputed evidence confirms that ORIC charged premium for the Accident Vehicle (as one of the 344 vehicles in Taylor's "end count"), it "rated" the Accident Vehicle and Zenith is entitled to summary judgment.

**B. The Fact That ORIC Charged Premium For An Average Number Of Vehicles Is Irrelevant**

Finally, ORIC argues that it did not "rate" the Accident Vehicle because it actually charged premium (based on the composite rate of $1,965.7165 per Taylor vehicle) based on a count of 333 vehicles for the relevant policy term, which was the average between the number of vehicles reported by Taylor at policy inception (321) and policy end (344). In other words, ORIC argues that because it applied the composite rate to the "average number of vehicles" (333), instead of strictly charging premium on a per-vehicle basis, it did not charge premium for the Accident Vehicle, or any vehicle for that matter. Regardless of the math involved, the undisputed fact remains that that ORIC actually charged and collected premium for the Accident Vehicle, which constitutes "rating".

As explained by ORIC and set forth in the Composite Rate Endorsement, the final premium for the policy is calculated by verifying the ending count for Taylor owned vehicles following the expiration of the policy and if higher than the initial count additional premium will be charged as was the case here. In addition, that end count included the Accident Vehicle.

However, the math involved in determining the final premium could also be explained as follows: ORIC effectively charged the full composite rate of ($1,965.7165) on a per-vehicle basis, for one-half of the sum of Taylor vehicles reported at policy inception and policy end (321+324 = 665; 665 / 2 = 332.5, which was rounded up to 333). Or alternatively, ORIC charged one half of the composite rate ($982.8583) *for each of the 665 Taylor vehicles actually reported* at policy inception and policy end. One of those vehicles was the Accident Vehicle, and Taylor was charged premium accordingly.

Regardless of how the math is characterized, the result is the same: if the Accident Vehicle had not been included in the final count, the total premium charged to Taylor for the

Becherer Kannett & Schweitzer
1255 Powell St.
Emeryville, CA 94608
510-658-3600

ORIC Policy would have been reduced by a specific amount. But because it was included in the ending count list, ORIC charged Taylor premium for the Accident Vehicle and the ORIC Policy "rated" that vehicle as a result.

## II. ORIC HAS ALSO FAILED TO DISPUTE THAT ITS POLICY "DESCRIBED" THE ACCIDENT VEHICLE

Turning to the second of the alternative requirements of Section 11580.9(d), ORIC argues that its policy does not "describe" the Accident Vehicle because it does not "particularize" the vehicle by appropriate characteristics such as make, model, and VIN number. Tellingly, ORIC concedes (as it must) that it actually had possession, in its underwriting files, of a list of Taylor-owned vehicles which identified the Accident Vehicle by year, make, model, and VIN number. [Zenith's UMF#39].

Yet ORIC argues that this is still not enough to constitute "describing" the vehicle because this list was not "made a part of" or "incorporated by reference" into the ORIC policy. To that end, ORIC downplays the explicit reference on the ORIC Policy's Declarations, in a field entitled "Schedule of Covered Autos You Own", to the list of Taylor vehicles "ON FILE WITH THE COMPANY". As explained below, ORIC cannot dispute that this reference incorporated into the policy a list which "described" the Accident Vehicle, thereby rendering its policy primary.

### A. Incorporation By Reference Of A Vehicle List Constitutes "Describing" The Vehicle

First, ORIC has argued that the reference to vehicles "on file with the company" on the Declarations of the ORIC policy does not constitute a "description" of the Accident Vehicle because the list is not physically attached to or made "a part of the policy". No such "physical attachment" requirement appears in the statute, nor has ORIC cited to any authority holding that its use of the phrase "ON FILE WITH THE COMPANY" as a shorthand, is insufficient to constitute a "description" of vehicles on such a list. Indeed, California law recognizes the concept of incorporation by reference under circumstances like this, even where the phrase "incorporated by reference" is not used:

> 'A contract may validly include the provisions of a document not physically a part of the basic contract. ... "It is, of course, the law that the parties may incorporate by reference into their contract the terms of some other document. [Citations.] But

Becherer Kannett & Schweitzer

1255 Powell St.
Emeryville, CA 94608
510-658-3600

> each case must turn on its facts. [Citation.] For the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties." ' [Citations.] [¶] The contract need not recite that it 'incorporates' another document, so long as it 'guide[s] the reader to the incorporated document.'

***Avidity Partners, LLC v. State*** (2013) 221 Cal.App.4th 1180, 1194.

Here, the reference to the vehicle list "ON FILE WITH" ORIC was "clear and unequivocal" and "called to the attention" of all parties, because it is specified on the policy's Declarations in bold and capital letters in a stand-alone section. There is no evidence that this reference was hidden from ORIC or Taylor in any respect, or that ORIC did not consent to this language in a policy that is issued. Furthermore, the lists of Taylor-owned vehicles were "known or easily available to the contracting parties", as they were prepared by Taylor and its broker, provided to ORIC through its agent ARU, and maintained in the ORIC underwriting files. [Dkt. No. 52 (Moore Decl.), ¶21, Dkt. No. 52-6 (Ex. 5 to same declaration)].

In addition, California case law suggests that incorporation-by-reference of a vehicle list *will* satisfy the "described" prong under the reasoning of the ***Hartford Accident & Indem. Co. v. Sequoia Ins. Co.*** (1989) 211 Cal.App.3d 1285, 1299 cited in ORIC's moving papers. As noted, that case held that Section 11580.9(d) did not apply to a Harford Umbrella Policy because there was inadequate language in that policy which expressly incorporated the underlying business auto policy (and its vehicle list) into the Hartford Umbrella policy: "*there being no incorporation by reference* of the Hartford Business Auto policy into the Hartford Umbrella policy, the 1976 Chevrolet Blazer is not "described or rated as an owned automobile" in the umbrella policy …". ***Hartford, supra*** 211 Cal.App.3d 1285, 1299. [Emphasis added]. As a result, the court held that section 11580.9(d) did not apply because the Hartford Umbrella policy did not "contain[] any mention of, *reference to*, or 'particularization' of the" accident vehicle. ***Id.*** at 1297–1298 [emphasis added].

However, the discussion demonstrates that had appropriate language been used, a policy may "incorporate by reference" a list of described vehicles, and make the same a part of the policy. Here, that is what ORIC did: instead of attaching a multi-page list it used the phrase "ON

**Becherer Kannett & Schweitzer**

1255 Powell St.
Emeryville, CA 94608
510-658-3600

FILE WITH THE COMPANY" and by doing so incorporated by reference a description of the accident vehicle. As contemplated in ***Hartford***, this type of incorporation by reference is sufficient to constitute "describing" the accident vehicle.

**B. The Fact That The ORIC Policy Covers "Any Vehicle" For Liability Is Irrelevant**

In an effort to minimize the significance of the list "ON FILE WITH THE COMPANY", ORIC argues that vehicle lists "are meaningless under 'Symbol 1' policies as 'Any Auto' is covered by the policy whether or not it is on a list". [ORIC's Opposition at p. 9:13-16]. This argument focuses on an irrelevant issue: the basis for coverage under the ORIC policy.

In other words, this dispute is premised on the fact that both the Zenith and ORIC policies provided coverage for the accident. Given that premise, the only remaining question is which policy "described or rated" the Accident Vehicle as that policy will be deemed primary. ORIC confuses the issue of why there was coverage for the Accident Vehicle under its policy with whether its policy "described or rated" the Accident Vehicle. While the ORIC policy provided "Symbol 1" coverage, that does not mean that it did not describe or rate the Accident Vehicle. That is a separate inquiry that is determined by certain specific characteristics of the ORIC policy, independent of the "Symbol 1" designation for coverage.

Nor is the list of Taylor-owned vehicles "meaningless" to ORIC as it asserts. If so, why were such vehicle lists maintained by ORIC in their underwriting files? And why the reference to such vehicles "ON FILE WITH THE COMPANY" on the Policy Declarations? At the very least, such lists were used in setting premium for (i.e. "rating") the ORIC policy as discussed above.

Finally, *even if* ORIC could somehow explain why the vehicle lists contained in its underwriting files were completely "meaningless", that does not mean that the ORIC policy did not "describe" the Accident Vehicle. The California Legislature directed that the policy that "describes or rates" the accident vehicle will be deemed primary. In doing so it did not require an inquiry into and explanation of the reasons for and mechanics of covering a vehicle. Rather, it simply directed that the policy that "described" (or "rated") the vehicle would be deemed primary. Here, it is undisputed that ORIC's policy did.

**Becherer Kannett & Schweitzer**

1255 Powell St.
Emeryville, CA 94608
510-658-3600

### C. Neither *Ohio Casualty* Or The Other Cases Cited By ORIC Demonstrate Otherwise

Finally, ORIC argues that the ***Ohio Casualty*** case creates a broad exemption from "audit" or "fleet" type policies under the statute, effectively holding that such policies can never "describe" an accident vehicle. Again, the ***Ohio Casualty*** court was not presented with any facts indicating that the policy at issue *actually* described the accident vehicle, or incorporated by reference a list that did so. This case does not hold that "fleet" or "audit" type policies can never "describe" an accident vehicle. It merely held (based on limited facts) that the policy at issue in that case did not. Since the evidence here is materially different, that case does not control or render Section 11580.9(d) inapplicable as ORIC asserts.

Next, ORIC argues that "a long line of cases has made clear that the statutory requirement that the vehicle be 'described or rated' refers to 'particularization'". However, each of the cases cited[1] merely cites ***Ohio Casualty*** as the authority for this general proposition. More importantly, none of these cases evaluated the "described" requirement (or the "rated" requirement, for that matter) in any type of detail, much less under factual circumstances like this. Nor did any create or recognize a blanket exemption to Section 11580.9(d) for "audit" or "fleet"-type policies. Thus, these cases offer no more support for ORIC's position than ***Ohio Casualty,*** which for the reasons discussed above is inapposite due to materially different facts.

For example, ORIC specifically discusses the case of ***Interinsurance Exchange v. Spectrum Investment Corp***. (1989) 209 Cal.App.3d 1243, in which the court surmised that if "an automobile rental company had a true liability insurance policy, if it was a fleet or audit policy – a not unlikely scenario – under Ohio Cas. Ins. Co. it would not be primary according to the terms of subdivision (d). ***Id.*** at 1254. However, such facts were not before the ***Interinsurance*** court, which did not involve a "fleet" or "audit" policy. Instead, the "policy of automobile liability insurance" at issue was actually a cash deposit submitted by the owner of a rental vehicle, which did not describe or rate any vehicles, rendering section 11580.9(d) inapplicable. Thus, the

**Becherer Kannett & Schweitzer**

1255 Powell St.
Emeryville, CA
94608
510-658-3600

[1] The cases include ***Mercury Cas. Co. v. Hertz Corp.*** (1997) 59 Cal.App.4th 414 [statute inapplicable to rental agreement which did not constitute a policy of insurance]; ***Grand Rent A Car Corp. v. 20th Century Ins. Co.*** (1994) 25 Cal.App.4th 1242 [statute applicable to rental company's liability insurance where rental agreement described vehicle by make, model, and license number]; and ***Hartford Accident & Indem. Co. v. Sequoia Ins. Co.*** (1989) 211 Cal.App.3d 1285 [statute inapplicable to umbrella policy, which did not "contain[] any mention of, reference to, or 'particularization' of accident vehicle"].

***Interinsurance*** court's reference to ***Ohio Casualty*** is dicta and does not extend the holding of ***Ohio Casualty*** beyond its facts, much less hold that "audit" or "fleet"-type policies can never "describe" an accident vehicle.

Finally, ORIC cites the case of ***Highlands Ins. Co. v. Continental Cas. Co.*** (9th Cir. 1995) for the proposition that "a policy which merely describes a vehicle as 'owned' and does not particularize the vehicle in any other way is not a primary policy as defined by section 11580.9(d)". While that limited statement may be true, again, this case involved materially different facts. Briefly, in ***Highlands*** an insurer argued that an umbrella policy "rated or described" an accident vehicle by listing the auto policy that described the accident vehicle (and referring to it as providing coverage for owned vehicles) on its schedule of underlying insurance.

Zenith does not contend that Section 11580.9(d) renders the ORIC policy primary simply because it covered all Taylor-owned vehicles or lists an underlying policy that describes the accident vehicle. Instead, Section 11580.9(d) renders the ORIC policy primary because as discussed herein the evidence demonstrates that it: (1) incorporated-by-reference a vehicle list which specifically identified the accident vehicle (thereby "describing" it); and (2) took the Accident Vehicle into consideration when charging premium for the policy at issue (thereby "rating" it). No such facts were at issue in ***Highlands***, or any of the other cases relied upon by ORIC.

Moreover, ORIC concedes that if the vehicle lists were incorporated by reference it is undisputed that they sufficiently described the Accident Vehicle. As a matter of law and undisputed evidence, such incorporation was effected making the ORIC policy primary as mandated by Section 11580.9(d).

## III. THE TIMING OF WHEN ORIC OBTAINED THE LIST CONTAINING THE ACCIDENT VEHICLE IS IRRELEVANT

Further, ORIC argues that even if the vehicle lists in its underwriting files were incorporated into the ORIC Policy, ORIC (purportedly) did not receive a list containing the Accident Vehicle until after the ***Grant*** accident (June 20, 2013). It argues that the vehicle list in its possession at the time of the accident did not contain and describe the Accident Vehicle, and

Becherer Kannett & Schweitzer
1255 Powell St.
Emeryville, CA 94608
510-658-3600

therefore the Accident Vehicle was not "ON FILE WITH THE COMPANY" or "described" by the subject Policy. Not so.

That is because by its plain language, the ORIC Policy does not require that the list be "on file with" ORIC *at any specific time* – only that it be "on file", which it undisputedly was, as part of ORIC's underwriting files. In other words, it is undisputed that ORIC had a list on file that described the Accident Vehicle, a fact that it does not mention or even attempt to dispute. [Dkt. No. 56, Zenith's UMF#39].

Moreover, regardless of when ORIC first obtained a copy of a list with the Accident Vehicle, it is undisputed that a vehicle list containing the Accident Vehicle was used by ORIC in setting premium for the ORIC Policy. [Dkt. No. 56, UMF# 28-32]. Indeed, in ORIC's own motion for summary judgment, it admits that the Accident Vehicle "was included among the vehicles reported in the audit at the end of the policy and it was part of the numbers used to calculate the average number of vehicles in the fleet throughout the policy year". [ORIC's MPA, p. 18:4-8]. In other words, not only did ORIC possess a vehicle list containing the Accident Vehicle in its underwriting files, the vehicles on that list were used to calculate the premium charged for the ORIC Policy at issue in this dispute.

Finally, ORIC dismisses the list of vehicles that contained the Accident Vehicle because it was not on file with the company "during the policy period." As explained by ORIC's Composite Rate Endorsement, vehicle lists at inception and following policy expiration are the basis for the final premium calculation. [Zenith's UMF#12]. This is verified by ORIC's Endorsement #3 that assessed additional premium that included a charge for the Accident Vehicle. That Endorsement, made a part of the ORIC Policy, is dated *October 5, 2015,* which is well after the May 1, 2014 expiration date of the ORIC Policy. [Dkt. No. 52-1, Ex. A to Moore Decl., p. 8 of 99]. Based upon the same rationale, a vehicle list that was considered by ORIC after the policy expired but not in its file "during the policy period" is nonetheless incorporated into ORIC's policy.

## IV. OBJECTIONS TO EVIDENCE

As detailed in Zenith's opposition to ORIC's motion [Dkt. No. 63], the majority of the declarations of Anne Wachtler [Dkt. No. 51] and Nicholas Moore [Dkt. No. 52] submitted in

**Becherer Kannett & Schweitzer**
1255 Powell St.
Emeryville, CA
94608
510-658-3600

support of ORIC's motion and opposition is objectionable because both address issues that are immaterial, such as: (1) whether the ORIC policy provided insurance coverage for the Accident Vehicle (which it undisputedly did); and (2) how the ORIC Policy's premium and composite rate were calculated. Zenith incorporates by reference its objections to both declarations, which are set forth in Dkt. No. 63, at p. 15:10 - 16:28.

## V. ORIC HAS FAILED TO CREATE ANY DISPUTED ISSUES OF MATERIAL FACT

In a final effort to defeat Zenith's motion, ORIC's response to Zenith's Separate Statement [Dkt. No. 67] purports to dispute a handful of undisputed facts in Zenith's motion. A close analysis indicates that ORIC has in fact failed to do so.

First, ORIC argues that Zenith's UMFs#12, 14, 18, and 19 are disputed because either Zenith or the ORIC policy's "Composite Rate Endorsement" purportedly do not "accurately describe the process used … to calculate premium for the ORIC Policy". While ORIC does not elaborate, based on the evidence cited, ORIC's "dispute" with this fact is merely semantic: ORIC's evidence demonstrates, at most, that a premium charge is determined for Taylor's policy with ORIC, and then "divided by the reported number of vehicles to determine the 'composite rate'". That is simply another way of stating what is set forth in the Composite Rate Endorsement and explained in Zenith's moving papers: that Taylor is effectively charged a specific amount of premium *per vehicle* for the ORIC Policy, including those vehicles reported at policy end.

Regardless of the math involved, the result is the same: a "per-vehicle" premium figure of $1,965.7165 per vehicle, characterized as a "composite rate", is determined and used to charge premium on a per-vehicle basis for all Taylor-owned vehicles reported at policy inception or policy end. Indeed, ORIC's 30(b)(6) witness has admitted that the Composite Rate Endorsement "accurately describes the process used [by ORIC] to determine – or to calculate premium for a business auto policy like the one at issue". [UMF#12].

Second, in response to Zenith's UMF#32, ORIC disputes that "the final vehicle count of 344 was used by ORIC to determine the final premium calculated for the ORIC Policy". Without explanation, ORIC cites to ¶19 of the Moore declaration, which merely demonstrates that ORIC

**Becherer Kannett & Schweitzer**
1255 Powell St.
Emeryville, CA 94608
510-658-3600

considered the ending count of 344 *along with the initial count of 321*, when calculating final premium for the policy. Zenith acknowledged this in the very next fact, UMF#33. Moreover, just because the initial count was considered in assessing final premium does not create a dispute over whether the ending count of 344 was likewise considered. There is no disputed issue of fact on this issue.

Finally, ORIC has introduced a series of "Additional Facts", which are purportedly material to the outcome of this motion. Each additional fact pertains to the mechanics of ORIC's "rating" process, the factors used in determining "composite rate", the physical contents of the ORIC Policy (whether it lists the accident vehicle), or legal conclusions such as whether that policy incorporates by reference any lists containing the Accident Vehicle or otherwise "describes" or "rates" that vehicle. Zenith has responded appropriately in the concurrently-filed Reply Separate Statement, and explained why each purported "Additional Fact" is immaterial for the same reasons discussed above. In other words, to the extent these facts are admissible, they are immaterial and do not change the fact that the ORIC Policy undisputedly "describes" and "rates" the Accident Vehicle.

## VI. IF THE COURT DETERMINES THE ORIC POLICY TO BE PRIMARY INSURANCE FOR THE GRANT ACCIDENT, ZENITH IS ENTITLED TO RECOUP ITS DEFENSE COSTS

Finally, ORIC argues that should the Court grant Zenith's motion and determine the ORIC Policy to be primary insurance for the subject accident, Zenith would only be entitled to recoup the amount of its settlement "overpayment" ($500,000), and not the fees and costs that Zenith paid to defend against that lawsuit (totaling $289,841.35). In support, ORIC argues that section 11580.9(d) does not specifically say anything about defense costs.

While that may be true, ORIC ignores well settled principal that a primary insurer is solely liable for the costs of defending the action until its policy limits are exhausted. ***Signal Cos., Inc. v. Harbor Ins. Co.*** (1980) 27 C3d 359, 368. Moreover, because the ORIC policy meets the requirements of Section 11580.9(d) the effect is that the ORIC Policy "shall be primary and the insurance afforded by any other policy or policies [i.e. the Zenith Policies] shall be excess." [Emphasis added]. Moreover, California law recognizes that an excess insurer who

**Becherer Kannett & Schweitzer**

1255 Powell St.
Emeryville, CA 94608
510-658-3600

pays defense costs that should have been paid by the primary insurer [like Zenith did here] may recover the same from the primary insurer via a claim for equitable subrogation or equitable indemnity. ***See e.g. Transcontinental Ins. Co. v. Insurance Co. of State of Pennsylvania*** (2007) 148 Cal.App.4th 1296, 1309. Thus, there is no merit to ORIC's position that Zenith may not recover defense costs if it establishes that ORIC provided primary insurance for the subject accident.

As a result, should the Court determine the ORIC Policy to be primary insurance, it should enter a monetary judgment in favor of Zenith for: (1) the remaining $500,000 on the ORIC Policy; (2) $289,841.35 for defense fees and costs incurred in defending the ***Grant*** action; (3) and interest on both at the rate of 10% since August of 2016 when the ***Grant*** lawsuit was settled through February 1, 2018 ($118,800.80 in interest), for a total of **$908,642.15.**

Alternatively, if requested by the Court, Zenith will provide supplemental briefing demonstrating the timing and payment of the above amounts, or further authority supporting its right to an award of defense costs. But at the very least, the Court should enter a monetary judgment in Zenith's favor for $500,000 plus prejudgment interest.

## VII. CONCLUSION

For all of the foregoing reasons, the undisputed evidence demonstrates that the ORIC Policy both "described" and "rated" the Accident Vehicle. As a result, the ORIC Policy must be rendered primary insurance for the accident at issue in the ***Grant*** lawsuit, and Zenith's motion must be granted.

Respectfully submitted,

Dated: February 22, 2018

BECHERER KANNETT & SCHWEITZER

By: */s/ David P. Borovsky*

KAREN L. UNO
DAVID P. BOROVSKY
Attorneys for Plaintiff ZENITH INSURANCE COMPANY and Third Party Defendant RAMIREZ HARVEST COMPANY, INC.

**Becherer Kannett & Schweitzer**

1255 Powell St.
Emeryville, CA 94608
510-658-3600