UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ZENITH INSURANCE COMPANY, | Case No. 5:16-cv-07219-EJD |
| Plaintiff, | **ORDER GRANTING ZENITH'S MOTION FOR SUMMARY JUDGMENT; DENYING OLD REPUBLIC INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT; SETTING STATUS CONFERENCE** |
| v. | |
| OLD REPUBLIC INSURANCE COMPANY, | |
| Defendant. | Re: Dkt. Nos. 46, 54 |

## I. INTRODUCTION

Plaintiff Zenith Insurance Company ("Zenith") and Defendant Old Republic Insurance Company ("ORIC") each contributed $1.5 million to settle a personal injury lawsuit arising out of an automobile accident. The payments were made subject to a reservation of rights by the insurers to seek reimbursement and re-allocation of the settlement payments and the costs of defending against the personal injury lawsuit. Zenith initiated this action to seek reimbursement of the entire $1.5 million it paid towards the settlement plus all defense fees and costs incurred in defending the personal injury lawsuit. The parties' competing motions for summary judgment ask the court to resolve a dispute over the priority of insurance policies pursuant to California Insurance Code section 11580.9(d). Based upon all pleadings filed to date, the undisputed evidence[1], and the

---

[1] ORIC's Request for Judicial Notice (Dkt. No. 48) is granted. Zenith's various objections to evidence as immaterial, irrelevant, legal conclusions, hearsay, vague, ambiguous, and lack of

1    comments of counsel at the hearing, the court will grant Zenith's motion and deny ORIC's motion.

2                                   II. BACKGROUND

3    A. The Personal Injury Lawsuit

4            In June of 2013, Rafael Resendiz, an employee of Ramirez Harvest Company, Inc.

5    ("Ramirez Harvest"), was driving a 2008 Chevrolet Silverado pickup truck owned by Taylor

6    Farms Retail, Inc. ("Taylor Farms") when he rear-ended another vehicle occupied by John K.

7    Grant. ORIC's Mem. of P. & A. in Supp. of Mot. for Summ. J. at 2 (Dkt. No. 47). Mr. Grant

8    sustained injuries in the accident and filed suit against Taylor Farms, Ramirez Harvest and Rafael

9    Resendiz. *Id*. At the time of the accident, the pickup truck (hereinafter "accident vehicle") was

10   owned by Taylor Farms and insured under an ORIC policy. *Id*. at 3. Ramirez Harvest was

11   insured on policies issued by Zenith. *Id*. Mr. Grant's lawsuit settled for $3 million with equal

12   contributions from ORIC and Zenith. *Id*. A third insurer paid nothing. *Id*.

13   B. The ORIC Policy- MWTB 22027

14           The accident vehicle was insured under ORIC policy MWTB 22027 ("ORIC Policy"),

15   which was issued to Taylor Fresh Foods, Inc. ("TFFI") with a policy period of May 1, 2013

16   through May 1, 2014. *Id*. This ORIC Policy was fronted by ORIC through Terra Group, a

17   member-owned "agri-business captive insurance company which provides specified lines of

18   insurance coverage to members of the captive, including automobile liability coverage." Wachtler

19   Decl. ¶ 3 (Dkt. No. 51).[2] TFFI joined the Terra Group in 2011 and remained a member until May

20   of 2015. *Id*. ¶¶ 5, 6. TFFI participated in the general liability and auto liability coverages

21   provided through the Terra Group captive. *Id*. ¶ 6. The ORIC Policy was one of a series of

22   renewal policies TFFI had with ORIC. *Id*.

23   _____

24   personal knowledge (Dkt. No. 63 at 19-21) are overruled to the extent the court refers or relies on
     such evidence in this Order because the objections go to the weight of the evidence. Any
25   objections to evidence not referred to or relied upon is this Order are deemed moot.
     [2] A captive insurance company is a form of self-insurance involving the establishment of a
26   subsidiary corporation or association organized to write insurance. Steven Plitt et al., Couch On
     Insurance § 39:2 (3rd Ed., 2019).
27   CASE NO.: 5:16-CV-07219-EJD
     ORDER GRANTING ZENITH'S MOTION FOR SUMMARY JUDGMENT; DENYING OLD
28   REPUBLIC INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT; SETTING
     STATUS CONFERENCE
                                         2

1    The Terra Group's captive insurance was administered by a separate entity, Associated

2    Risk Underwriting ("ARU"). *Id*. ¶ 4. The Terra Group captive was "generally underwritten as a

3    whole, and premiums [were] developed between ARU and ORIC for the captive, generally, as a

4    whole." *Id*. ¶ 6. ARU developed the premium for the ORIC Policy using a multiplicity of factors,

5    none of which had anything to do with the unique features or value of any particular TFFI vehicle.

6    Moore Decl. ¶¶ 14, 15 (Dkt. No. 52).

7    After ARU and ORIC developed a premium for the Terra Group captive, ARU assigned

8    premium and expense components among the captive members. Wachtler Decl. ¶ 7. Members of

9    the Terra Group captive paid premiums to ARU and ARU paid ORIC. *Id*.

10    All auto policies in the Terra Group captive, including the ORIC Policy issued to TFFI,

11    were written as a "Symbol 1" policy that provided coverage for "any auto" used by TFFI,

12    irrespective of whether or not TFFI owned the vehicle. *Id*. ¶ 8; *see also* Moore Decl. ¶ 6. The

13    premium charged at the inception of the ORIC Policy was a "composite rate charged against the

14    initial number of vehicles reported" by the insured. Moore Decl. Ex. 2. The composite rate was

15    based upon a number of factors including, but not limited to, each Terra Group member's loss

16    history, number of vehicles to be insured, amount of deductible, type of vehicle, and garage

17    location. Uno Decl. Ex. C; Wachtler Decl. ¶¶ 15-16. The ORIC Policy included "all new vehicles

18    throughout the year with no need to report or endorsements being issued." *Id*. The Composite

19    Rate Endorsement of the ORIC Policy provided that "[a]t the conclusion of the policy year, a final

20    vehicle total will be reported. The final premium will be determined by totaling the beginning and

21    ending counts, dividing this by two (averaging) and multiplying this by the composite rate." *Id*.

22    The Terra Group captive renewed annually on an aggregate basis for all insureds and their policies

23    on May 1st of every year. *Id*. ¶ 5.

24    There was a "Business Auto Declarations" form for the ORIC Policy. Moore Decl. Ex. 1 at

25    20. Item Three of the 2013 Business Auto Declarations form, entitled "Schedule of Covered

26    Autos You Own," was formatted as a table with columns to fill in the year, model, trade name,

27    CASE NO.: 5:16-CV-07219-EJD
ORDER GRANTING ZENITH'S MOTION FOR SUMMARY JUDGMENT; DENYING OLD

28    REPUBLIC INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT; SETTING
STATUS CONFERENCE

1   body type, serial number and vehicle ID number for each covered auto. *Id*. The columns were not

2   filled in. *Id*. at 3. Instead, across all of the columns there was a typed notation that read "ON

3   FILE WITH THE COMPANY." *Id*. The accident vehicle was not initially on the list of vehicles

4   on file with ORIC as of June of 2013. Moore Decl. ¶ 22, Ex. 5. Eventually, however, ORIC's

5   underwriting files included a spreadsheet dated January 8, 2014 ("January 8, 2014 vehicle list")

6   that listed the accident vehicle as a "Light Truck" and identified the accident vehicle by year,

7   make, model, vehicle ID number and other information. Uno Decl. Ex. B at ORIC 01719.

8          ORIC hired a third party company, Pyramid Audit Solutions ("Pyramid"), to conduct an

9   audit to determine the "ending count" for the ORIC Policy as of May 1, 2014. *Id*. Among the

10  information Pyramid reviewed for the audit was a list of vehicles provided by TFFI. Uno Decl.

11  Ex. E. Pyramid sent ORIC an Audit Report specifying an "ending count" of 344 vehicles and a

12  Vehicle Schedule identifying all of the vehicles. *Id*. Ex. D. The accident vehicle was among the

13  vehicles listed in the Vehicle Schedule and was identified by VIN number, year, make, model and

14  other information, just as it had been in the January 8, 2014 vehicle list. *Id*. In accordance with

15  Composite Rate Endorsement, ORIC calculated TFFI's additional premium by taking the average

16  of the initial vehicle count and the ending vehicle count and multiplying that number by the

17  composite rate per vehicle. *Id*. Exs. B, C. ORIC charged TFFI an additional premium after the

18  audit was completed.

19                              III.  STANDARDS

20         A motion for summary judgment or partial summary judgment should be granted if "there

21  is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

22  law." Fed. R. Civ. P. 56(a); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

23  The moving party bears the initial burden of informing the court of the basis for the motion and

24  identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or

25  affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*,

26  477 U.S. 317, 323 (1986). If the issue is one on which the nonmoving party must bear the burden

27  CASE NO.: 5:16-CV-07219-EJD
    ORDER GRANTING ZENITH'S MOTION FOR SUMMARY JUDGMENT; DENYING OLD
28  REPUBLIC INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT; SETTING
    STATUS CONFERENCE

1    of proof at trial, the moving party need only point out an absence of evidence supporting the

2    claim; it does not need to disprove its opponent's claim. *Id*. at 325.

3        If the moving party meets the initial burden, the burden then shifts to the nonmoving party

4    to go beyond the pleadings and designate specific materials in the record to show that there is a

5    genuinely disputed fact. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 324. A "genuine issue"

6    for trial exists if the nonmoving party presents evidence from which a reasonable jury, viewing the

7    evidence in the light most favorable to that party, could resolve the material issue in his or her

8    favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

9        The court must draw all reasonable inferences in favor of the party against whom summary

10    judgment is sought. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

11    However, the mere suggestion that facts are in controversy, as well as conclusory or speculative

12    testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. *Id*.

13    ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than

14    simply show that there is some metaphysical doubt as to the material facts."); *Thornhill Publ'g*

15    *Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Instead, the non-moving party must come

16    forward with admissible evidence to satisfy the burden. Fed. R. Civ. P. 56(c).

17        "If the nonmoving party fails to produce enough evidence to create a genuine issue of

18    material fact, the moving party wins the motion for summary judgment." *Nissan Fire & Marine*

19    *Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1103 (9th Cir. 2000). "But if the nonmoving party produces

20    enough evidence to create a genuine issue of material fact, the nonmoving party defeats the

21    motion." *Id*.

22                        IV. DISCUSSION

23        Zenith contends that pursuant to California Insurance Code section 11580.9(d)[3], ORIC

24    bears primary responsibility for the Grant settlement, whereas ORIC contends that section

25

---

26    [3] All subsequent statutory references are to the California Insurance Code unless indicated
otherwise.

27    CASE NO.: 5:16-CV-07219-EJD
ORDER GRANTING ZENITH'S MOTION FOR SUMMARY JUDGMENT; DENYING OLD

28    REPUBLIC INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT; SETTING
STATUS CONFERENCE

11580.9(d) does not apply. Section 11580.9(d) provides in relevant part:

> [W]here two or more policies affording valid and collectible liability insurance apply to the same motor vehicle or vehicles in an occurrence out of which a liability loss shall arise, it shall be conclusively presumed that the insurance afforded by that policy in which the motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess.

Cal. Ins. Code §11580.9(d). Section 11580.9(d) contains four elements: "(1) the existence of two or more valid and collectible insurance policies affording coverage which (2) apply to the same 'motor vehicle or vehicles' (3) in an occurrence out of which a 'liability loss' arises and (4) one or more of which policies describes the motor vehicle as an 'owned automobile.'" *Transp. Indem. Co. v. Royal Ins. Co.*, 189 Cal. App. 3d 250, 253 (1987).

The conclusive presumption set forth in section 11580.9(d) can be applied only where the policy of automobile liability insurance describes or rates the vehicle involved in the accident as an owned car. *See Interinsurance Exch. v. Spectrum Inv. Corp.*, 209 Cal. App. 3d. 1254, 1255 (1989) (holding that section 11580.9(d) was inapplicable to cash deposit form of automobile liability insurance because cash deposit did not describe or rate the vehicle involved in the accident as an owned automobile). Thus, the parties' cross-motions ask the court to decide whether the accident vehicle is "described or rated" as an owned car in the ORIC Policy.

A. Whether Section 11580.9(d) Applies to a "Fleet" Policy

Citing *Ohio Casualty Ins. Co. v. Aetna Ins. Co.*, 85 Cal. App. 3d 521, 524 (1978), ORIC argues that section 11580.9(d) categorically does not apply to "fleet" policies such as the ORIC Policy. At the hearing on the motions, ORIC explained that a "fleet" policy (also known as an "audit" policy) is designed to provide insurance coverage for businesses with multiple vehicles of various types, whether owned, non-owned, borrowed, rented, hired or found.

In *Ohio Casualty*, two insurance carriers, Ohio Casualty and Aetna, contributed to a settlement of an underlying personal injury suit arising out of an automobile accident and thereafter sought declaratory relief to establish priority of coverage under section 11580.9(d). The

CASE NO.: 5:16-CV-07219-EJD
ORDER GRANTING ZENITH'S MOTION FOR SUMMARY JUDGMENT; DENYING OLD REPUBLIC INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT; SETTING STATUS CONFERENCE

6

Aetna policy expressly described and rated the vehicle involved in the accident in a schedule of the policy. *Id*. at 524. Aetna argued, however, that Ohio Casualty's "audit" or "fleet" policy, by which a newly acquired vehicle automatically became insured upon transfer of ownership, also described and rated the accident vehicle. Aetna reasoned that the Ohio Casualty policy gave a general description of a "class" of insured vehicles, namely "'an automobile owned by the named insured' which becomes covered the moment ownership exists," and because this general description was sufficient for purposes of Insurance Code section 11580.1(b)(2)[4], the general description should also be sufficient for purposes of section 11580.9(d). *Id*. Aetna urged the court of appeals to construe section 11580.9(d) as applying to policies with a general description such as a class of motor vehicles owned by the named insured "because otherwise when an audit policy is involved, a particular description might never be given; yet in the case of a recent transfer, where the statutory notice of transfer has not been given, the true owner is the transferee and his carrier should be primary or at least there should be apportionment between the two insurers." *Id*. The court of appeals rejected the argument, stating that it was "bound by the statute which requires description or rating; this, in commonsense understanding, means a particularization of the vehicle." *Id*.

ORIC's interpretation of *Ohio Casualty* is not unreasonable: the court's rationale suggests that section 11580.9(d) categorically does not apply to a "fleet" or "audit" policy. *See Interinsurance Exchange*, 209 Cal. App. 3d. at 1254 ("Even where the automobile rental company had a true liability insurance policy, if it was a fleet or audit policy - a not unlikely situation - under *Ohio Cas. Ins. Co., supra*, 85 Cal. App. 3d 521, it would not be primary according to the terms of subdivision (d)."). The *Ohio Casualty* court, however, did not go so far as to create a blanket exception for "fleet" or "audit" policies. Rather, the *Ohio Casualty* stated that it was

---

[4] Section 11580.1(b)(2) requires a policy of automobile liability insurance to contain, among other things, a "[d]esignation by explicit description of, or appropriate reference to, the motor vehicles or *class of motor vehicles* to which coverage is specifically granted." Cal. Ins. Code § 11580.1(b)(2).

CASE NO.: 5:16-CV-07219-EJD
ORDER GRANTING ZENITH'S MOTION FOR SUMMARY JUDGMENT; DENYING OLD REPUBLIC INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT; SETTING STATUS CONFERENCE

7

1    "bound by the statute" and proceeded to analyze whether the vehicle at issue was "described" or

2    "rated." *Ohio Cas. Ins. Co.,* 85 Cal. App. 3d at 524. This court is likewise bound by the statute.

3    As Zenith points out, section 11580.9 does not categorically exempt any type of insurance policy

4    and this court will not interpose such a categorical exemption here.

5    B. Whether The Accident Vehicle Was Described in the ORIC Policy

6           "A vehicle is described or rated when it is 'particularized' in a policy." *Scottsdale Indem.*

7    *Co. v. Nat'l Cont'l Ins. Co.*, 229 Cal. App. 4th 1166, 1171 (2014) (citing *Ohio Cas. Ins. Co.* 85

8    Cal. App. 3d at 524); *see also Mercury Cas. Co. v. Hertz Corp.*, 59 Cal. App. 4th 414, 422 (1997)

9    ("To 'describe or rate' a vehicle means a particularization of the vehicle."); *Grand Rent A Car*

10   *Corp. v. 20th Century Ins. Co.*, 25 Cal. App. 4th 1242, 1253 (1994) ("This conclusive presumption

11   requires that the primary policy 'particularize' the vehicle."); *Hartford Accident & Indem. Co. v.*

12   *Sequoia Ins. Co.*, 211 Cal. App. 3d 1285, 1297-98 (1989) (holding that business auto policy that

13   "specifically describe[d] as one of the insured vehicles the 1976 Chevrolet Blazer involved in the

14   accident" was primary under section 11580.9(d)). "[A] policy which merely describes a vehicle as

15   'owned' and does not particularize the vehicle in any other way is not a primary policy as defined

16   by § 11580.9(d)." *Highlands Ins. Co. v. Cont'l Cas. Co.*, 64 F.3d 514, 519 (9th Cir. 1995) (citing

17   *Ohio Cas. Ins. Co.,* 85 Cal. App. 3d at 523).

18          Here, ORIC contends that no vehicles are "particularized" in its policy. ORIC reasons that

19   the Business Auto Declarations form does not contain a schedule of vehicles identifying each

20   vehicle by year, model, trade name, body type, serial number and vehicle number, and instead

21   bears a typed notation indicating that the schedule of vehicles is "ON FILE WITH THE

22   COMPANY." ORIC's Mem. of P. & A. at 9 (Dkt. No. 47). ORIC contends that "the list of

23   vehicles is not part of the policy; the schedule of vehicles is not on the list of policy forms and

24   there are no terms or provisions in the policy which make a vehicle schedule part of the policy or

25   otherwise incorporate the contents of any vehicle list into the policy." *Id*. at 9-10. Moreover,

26   ORIC contends that a vehicle list serves no purpose because coverage under the ORIC Policy

27   CASE NO.: 5:16-CV-07219-EJD
     ORDER GRANTING ZENITH'S MOTION FOR SUMMARY JUDGMENT; DENYING OLD
28   REPUBLIC INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT; SETTING
     STATUS CONFERENCE

1  extends to "Any Auto" used by TFFI, and "[c]onsequently the policy purposely does not

2  incorporate vehicle lists into the policy and nothing in the policy makes any vehicle list a part of

3  the policy."  Moore Decl. ¶¶ 6-9.

4        ORIC's arguments are unpersuasive.  The ORIC Policy incorporated by reference the

5  vehicle lists that were in ORIC's underwriting files.  A contract may validly include the provisions

6  of a document not physically a part of the contract.  *Avidity Partners v. California*, 221 Cal. App.

7  4th 1180, 1194 (2013).  For the terms of another document to be incorporated by reference into a

8  contract, "the reference must be clear and unequivocal, the reference must be called to the

9  attention of the other party and [that party] must consent thereto, and the terms of the incorporated

10  document must be known or easily available to the contracting parties."  *Id*.  The contract need not

11  recite that it "incorporates" another document as long as it "guide[s] the reader to the incorporated

12  document."  *Id*.

13        Here, the notation "ON FILE WITH THE COMPANY" was clear and unequivocal and

14  called to the attention of all parties.  The notation was set off from the text of the ORIC Policy's

15  Business Auto Declarations form by lettering that was bolded and capitalized.  ORIC understood

16  that the notation was a reference to vehicle lists that were within ORIC's underwriting files.  Uno

17  Decl. Ex. B (ORIC 30(b)(6) Dep. 45:12-46:2, Ex. 9 to same Dep.).  ORIC consented to having

18  vehicle lists kept in its files rather than listing the over 300 TFFI-owned vehicles in the Business

19  Auto Declarations form.  In addition, TFFI's final premium could not have been calculated

20  without beginning and ending counts for TFFI's vehicles, counts which were apparently

21  substantiated by vehicle lists that were provided to ORIC at the inception of the ORIC Policy and

22  again when Pyramid gave ORIC the results of the audit.  Therefore, the TFFI vehicle lists on file

23  with ORIC, which included the January 8, 2014 vehicle list and the Vehicle Schedule, were

24  incorporated by reference into the ORIC Policy.  *See Avidity Partners*, 221 Cal. App. 4th at 1194.

25        The January 8, 2014 vehicle list and the Vehicle Schedule identified the accident vehicle

26  by year, make, model, VIN number and other characteristics.  This information particularized the

27  CASE NO.: 5:16-CV-07219-EJD
ORDER GRANTING ZENITH'S MOTION FOR SUMMARY JUDGMENT; DENYING OLD

28  REPUBLIC INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT; SETTING
STATUS CONFERENCE

1  accident vehicle for purposes of section 11580.9(d). *See Grand Rent A Car Corp.*, 25 Cal. App.

2  4th at 1253 (applying section 11580.9(d) priority to car rental agreement that described car by

3  make, model, color and license number). It does not matter that a vehicle list was not on file with

4  ORIC when the ORIC Policy incepted in May of 2013 or when the accident occurred because the

5  ORIC Policy did not require that a vehicle list be on file on any specific date or during a set time

6  frame, only that a vehicle list be on file.

7  ORIC contends that there was no clear and unequivocal incorporation by reference because

8  the TFFI's vehicle lists served no purpose. The argument is unpersuasive. If vehicle lists were

9  meaningless to ORIC, then there would have been no reason for the ORIC Policy "Business Auto

10  Declarations" form and no reason for the "ON FILE WITH THE COMPANY" notation.

11  Moreover, the Vehicle Schedule served a purpose by substantiating the 344 ending count that was

12  used to calculate TFFI's final premium, even if the detailed information regarding the model, year,

13  and other characteristics of each TFFI vehicle had no bearing on the calculation. Finally, even if

14  TFFI's vehicle lists were meaningless (which they are not), the fact remains that the lists were

15  incorporated by reference into the ORIC Policy and included a particularized description of the

16  accident vehicle. Therefore, the accident vehicle was described for purposes of section

17  11580.9(d).

18  C. Whether The Accident Vehicle Is Rated in the ORIC Policy

19  Because the accident vehicle was described in the ORIC Policy for purposes of section

20  11580.9(d), it is unnecessary and purely academic for the court to address whether the accident

21  vehicle was also rated. Nevertheless, the court will address the issue because the parties have

22  briefed the issue.

23  Zenith contends that for purposes of section 11580.9(d), a "rated" vehicle is essentially a

24  vehicle for which an insurer has determined the amount of premium to charge for that risk.

25  Zenith's Mem. of P. & A. in Supp. of Mot. for Summ. J. at 6 (citing Black's Law Dict. (7th ed.

26  1999) and International Risk Management Institute). Applying this generally accepted industry

27  CASE NO.: 5:16-CV-07219-EJD
ORDER GRANTING ZENITH'S MOTION FOR SUMMARY JUDGMENT; DENYING OLD

28  REPUBLIC INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT; SETTING
STATUS CONFERENCE

definition, Zenith contends that the accident vehicle was rated because it was "counted" in calculating the premium for the ORIC Policy in accordance with the Composite Rate Endorsement. In other words, the ORIC Policy premium increased when the accident vehicle was accounted for, and according to Zenith, this accounting satisfies the rating prong of the statute. Zenith acknowledges that the rating process for a personal auto policy is different in that it typically includes evaluating the specific characteristics of the auto, such as its make, model and mileage. Zenith also acknowledges that the specific characteristics of each of TFFI's vehicles, including the accident vehicle, were not considered in determining TFFI's premium. Nevertheless, Zenith contends that the statute does not dictate how a vehicle is to be "rated" and that ORIC's composite rating method constitutes rating.

Zenith's argument would be compelling but for California cases construing the phrase "described or rated" in section 11580.9(d) to require particularization of a vehicle. In *Ohio Casualty,* the court stated that the statute "requires description or rating; this, in commonsense understanding, means a particularization of the vehicle." *Ohio Cas. Ins. Co.*, 85 Cal. App. 3d at 524. Courts citing to *Ohio Casualty* have construed this statement as imposing the "particularization" standard to both the "described" and "rated" prongs of section 11580.9(d), notwithstanding Zenith's argument to the contrary. *See Scottsdale Indem. Co.*, 229 Cal. App. 4th at 1171 ("A vehicle is described or rated when it is particularized in a policy."); *Mercury Cas. Co.*, 59 Cal. App. 4th at 422 ("To 'describe or rate' a vehicle means a particularization of the vehicle."); *see also Croskey, et al*., Cal. Prac. Guide Ins. Litig. (The Rutter Group 2016) § 8:50 ("Description or rating means a 'particularization of the vehicle."). The state appellate court decisions are persuasive precedent. *Chemstar, Inc. v. Liberty Mut. Ins. Co.*, 41 F.3d 429, 432 (9th Cir. 1994).

Here, ARU developed an aggregate policy premium for TFFI based upon factors other than the value, age, make, model, type, use, mileage or location of any of the vehicles covered under the ORIC Policy. That aggregate policy premium was divided by TFFI's number of vehicles at

CASE NO.: 5:16-CV-07219-EJD
ORDER GRANTING ZENITH'S MOTION FOR SUMMARY JUDGMENT; DENYING OLD REPUBLIC INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT; SETTING STATUS CONFERENCE

11

the inception of the ORIC Policy to establish a unit rate.  TFFI's final premium was calculated by

applying that unit rate to the average of number of TFFI's vehicles in accordance with the

Composite Rate Endorsement without any consideration of the specific characteristics of the

accident vehicle.  Hence, the unit rate was not particularized to the accident vehicle.  It follows

that the accident vehicle was not rated for purposes of section 11580.9(d).

V.  CONCLUSION

For the reasons set forth above, the court finds that section 11580.9(d) applies.  Therefore,

Zenith's motion is GRANTED to the extent Zenith seeks a determination that ORIC Policy is

conclusively presumed to be primary.  ORIC's motion is DENIED.  The court sets a status

conference for August 29, 2019 at 10:00 a.m.  No later than  August 19, 2019, the parties shall file

a joint status conference statement outlining the parties' proposal for resolution of the remaining

issues in the case including, which include but are not necessarily limited to, whether Zenith is

entitled to an award of defense fees and costs relating to the Grant case.

**IT IS SO ORDERED.**

Dated:   July 17, 2019

EDWARD J. DAVILA
United States District Judge

CASE NO.: 5:16-CV-07219-EJD
ORDER GRANTING ZENITH'S MOTION FOR SUMMARY JUDGMENT; DENYING OLD
REPUBLIC INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT; SETTING
STATUS CONFERENCE